[No. S058929. Jan. 22, 1998.]

PLANNING AND CONSERVATION LEAGUE et al., Plaintiffs and Appellants, v.
DEPARTMENT OF WATER RESOURCES et al., Defendants and Respondents.

## COUNSEL

Antonio Rossmann and Roger B. Moore for Plaintiffs and Appellants.

Thomas J. Graff as Amicus Curiae on behalf of Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Charles W. Getz IV, Assistant Attorney General, Marian E. Moe, Deputy Attorney General, Michael N. Nordstrom, Jennifer A. Lee, Emily J. Cote, Anthony C. Bennetti, Brunick, Alvarez & Battersby, Jeffery L. Caufield, William J. Brunick, Hanson, Bridgett, Marcus, Vlahos & Rudy, Ray E. McDevitt, Stephen B. Peck, McCormick, Kidman & Behrens, Russell G. Behrens, David D. Boyer, Best, Best & Krieger, Gregory K. Wilkinson, Eric L. Garner, Hatch and Parent, Susan F. Petrovich, Stanley M. Roden, Kronick, Moskovitz, Tiedemann & Girard, Clifford W. Schulz, Robin Leslie Stewart, O'Melveny & Myers, Robert S. Draper, Lemieux & O'Neill and Tari L. Cody for Defendants and Respondents.

## OPINION

**WERDEGAR, J.**—The Code of Civil Procedure[1] provides, in sections 860 to 870, a set of accelerated in rem procedures for determining the validity of certain bonds, assessments and other agreements entered into by public agencies. Among the shortened time periods specified is a 30-day period for appealing from the "judgment" in a validation action. (§ 870, subd. (b).) This 30-day period constitutes an exception from the normal time for filing an

---

[1]All unspecified statutory references are to the Code of Civil Procedure.

appeal specified in California Rules of Court, rule 2(a)[2] (the earlier of 60 days after notice of entry or 180 days after entry of judgment), and is expressly recognized as an exception in rule 2(a). Entry of "judgment" in rule 2(a) includes entry of an appealable order; the same time periods, therefore, ordinarily apply whether the appeal is from a final judgment or an appealable order. (Rules 2(d), 40(g).) Section 870, however, fails expressly to state that the shortened time for appealing the "judgment" in a validation action applies, as well, to appealable orders. The question thus arises, and must be answered in this case, whether the notice of appeal from an appealable order in a validation action must be filed within the 30 days provided by section 870 or may be filed anytime within the longer period set forth in rule 2(a). For reasons explained below, we conclude the former reading of section 870, applying the shortened period to appealable orders as well as to judgments per se, best comports with the probable intent of the Legislature.

PROCEDURAL BACKGROUND

The facts underlying this lawsuit, and the merits of the appeal, are immaterial to the narrow procedural issue before us. Suffice it to say that plaintiffs'[3] amended complaint sought declaratory and injunctive relief against the California Department of Water Resources (DWR) and the Central Coast Water Authority (CCWA) with regard to a 1994 agreement executed by defendants and others, known as the Monterey Agreement, which, when implemented in December 1995, altered DWR's allocation of water from the California Water Project to various local water agencies. In addition to causes of action alleging violation of the California Environmental Quality Act (CEQA), plaintiffs alleged that DWR's amendment of water supply contracts, pursuant to the Monterey Agreement, violated the non-alienation mandate of Water Code section 11464. On that cause of action, plaintiffs sought a judgment "invalidating all the water supply contract amendments and the Kern Water Bank Contract, as executed on December 13, 1995."

Plaintiffs served the summons and complaint on DWR and CCWA by delivery and mailing on January 4, 1996. A revised summons was issued March 27, 1996, addressed to DWR and "all persons interested in the Matter of the Monterey Amendments to State Water Supply Contracts." Plaintiffs

---

[2]All rule references are to the California Rules of Court.

[3]Plaintiffs are the Planning and Conservation League, the Plumas County Flood Control and Water Conservation District and the Citizens Planning Association of Santa Barbara County.

mailed the revised summons to 28 state water contractors, including the Kern County Water Agency (KCWA), and published it in the Sacramento Daily Recorder.

KCWA moved to quash service of summons on the ground that it is a public agency and, therefore, under section 863, it had to be individually and formally served according to the procedures in section 415.10 or 415.30. Several other water contractors, including the Metropolitan Water District of Southern California (MWD), subsequently filed identical motions incorporating KCWA's arguments. In addition, defendants (DWR and CCWA) moved for summary adjudication of the invalidation cause of action on the grounds that section 863 required plaintiffs to name and serve MWD and KCWA as defendants, that they were indispensable parties to the action, and that they could not be joined because the statute of limitations (60 days) had passed.

The superior court granted the motion for summary adjudication by order filed June 10, 1996, and granted the motions to quash service of summons by order filed June 18, 1996. Notice of entry of the order quashing service was served on June 24. On June 20, the superior court also ruled in defendants' favor on the CEQA causes of action, which had been previously submitted. On August 15, the court, having resolved all causes of action in defendants' favor, entered final judgment for defendants. Notice of the entry of judgment was served on August 19, 1996.

On August 20, 1996, plaintiffs filed a notice of appeal. They appealed from the final judgment and from "the order quashing service of summons on the specially moving parties." (See § 904.1, subd. (a)(3) [order quashing service of summons is appealable].) KCWA, joined by a number of other water contractors who had also moved to quash service of summons, moved to dismiss the appeal as to the order quashing service, on the ground that section 870's 30-day period governed appeals in validation actions and that the August 20 notice of appeal was untimely as to the order quashing service, notice of entry of which was served June 24.

The Court of Appeal granted the motion, dismissing the appeal from the order quashing service "on the grounds that it is untimely filed." We granted plaintiffs' petition for review to resolve the question of timeliness.

## DISCUSSION

Chapter 9 of title 10 of part 2 of the Code of Civil Procedure (hereinafter sometimes chapter 9), consisting of sections 860 through 870, was first

enacted in 1961, with the purpose of consolidating and harmonizing the various existing statutes providing special procedures for actions by cities, counties and public agencies to establish the validity of their bonds and assessments. (*City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 340 [85 Cal.Rptr. 149, 466 P.2d 693].) Chapter 9 does not specify the matters to which it applies; rather, the chapter's procedures apply to "any matter which under any other law is authorized to be determined pursuant to this chapter." (§ 860.) In addition to a variety of statutes authorizing specific types of actions under chapter 9 (e.g., Gov. Code, §§ 50669.6, 53359; Wat. Code, § 35855; Pub. Resources Code, §§ 26037, 32208), Government Code sections 53511 and 17700 provide that any local or state agency may bring an action, pursuant to chapter 9, to determine the validity of its "bonds, warrants, contracts, obligations or evidences of indebtedness." (But see *City of Ontario* v. *Superior Court, supra,* 2 Cal.3d at pp. 343-345 [questioning whether Government Code section 53511 was intended to subject all actions challenging local agency "contracts" to chapter 9's procedures].) Section 863 provides for actions, such as the present one, by "interested person[s]" challenging the validity of agency actions that are subject to chapter 9.

Section 870, the part of chapter 9 with which we are directly concerned here, provides in part: "(b) Notwithstanding any other provision of law including . . . any rule of court, no appeal shall be allowed from any judgment entered pursuant to this chapter unless a notice of appeal is filed within 30 days after the notice of entry of the judgment, or, within 30 days after the entry of the judgment if there is no answering party."

The ordinary time for filing an appeal from the superior court is stated in rule 2(a), which provides in part: "Except as otherwise provided by Code of Civil Procedure section 870 or other statute or rule 3, a notice of appeal from a judgment shall be filed on or before the earliest of the following dates: (1) 60 days after the date of mailing by the clerk of the court of a document entitled 'notice of entry' of judgment; (2) 60 days after the date of service of a document entitled 'notice of entry' of judgment by any party upon the party filing the notice of appeal, or by the party filing the notice of appeal; or (3) 180 days after the date of entry of the judgment."

Rule 2(d) states: "As used in subdivisions (a) and (c) of this rule, 'judgment' means 'appealable order' if the appeal is from an appealable order." To similar effect, rule 40(g) provides that, in the appellate rules, unless the context or subject matter requires otherwise, " 'Judgment' includes any judgment, order or decree from which an appeal lies."

■ Neither rule 2 nor section 870 states explicitly what time period applies to the appeal from an appealable order in a validation action. Section

870 provides a shortened period for appeal from the "judgment" in such an action, notwithstanding the ordinary time periods in rule 2, but without making clear whether "judgment" in section 870, as in rule 2, includes an appealable order. Rules 2(d) and 40(g) define "judgment" to include an appealable order, but, by their own terms, their definition applies only to "judgment" as used in the appellate rules. The broad definition of the term provided in the rules does not apply *directly* to the Legislature's use of the term in a statute. That the detailed provisions governing time and procedure for initiating and prosecuting appeals are found in the Rules of Court, however, rather than in statutory law (see § 901), suggests that statutes on the subject should be read against the background of the appellate rules. As already seen, those rules define "judgment," for purposes of notice of appeal, to include an appealable order. Thus section 870, read together with the appellate rules from which it sets forth a limited exception, is ambiguous.

Nor can the legislative intent be immediately deduced from the meaning of the same term ("judgment") in other statutes. Final judgments and appealable orders are analytically distinct classes, and many statutes regarding appeals refer to them separately. (See, e.g., §§ 901, 908, 916, 917.1-917.6, 922 [all referring to the "judgment or order" appealed from].) "Judgment," moreover, is defined in section 577 as "the final determination of the rights of the parties in an action or proceeding." But the Legislature has sometimes, in appellate and related contexts, used the term "judgment" to refer as well to appealable orders. (See, e.g., §§ 664.5, subd. (c) [notice of entry of judgment; defining "judgment" to include appealable orders], 903 [if person with the "right to appeal" dies, appeal may be filed by personal representative or by attorney of record in court in which the "judgment" was rendered], 906 [in appeal from "judgment or order," party in whose favor the "judgment" was given may ask for review of matters pertinent to lack of prejudice].) Because appealable orders are, for purposes of appeal, generally treated like final judgments, and because statutory language has often been imprecise in this respect, courts have on several occasions construed "judgment" in a statute relating to appeals to include an appealable order. (*Greene* v. *Amante* (1992) 3 Cal.App.4th 684, 689 [4 Cal.Rptr.2d 571] [construing section 904.1, former subdivision (k)]; *Kohan* v. *Cohan* (1991) 229 Cal.App.3d 967, 970 [280 Cal.Rptr. 474] [same]; *City of Oakland* v. *Darbee* (1951) 102 Cal.App.2d 493, 505 [227 P.2d 909] [construing former section 956].)

The statutory language, read in the context of the appellate rules and other statutory uses of the same term, does not make plain whether "judgment" in section 870 includes an appealable order. We must therefore look to the

statute's history and purposes to determine the legislative intent. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

As originally enacted, section 870 did not shorten the time for appeal; it provided only, as still stated in subdivision (a) of the law, that the judgment in a validation action is conclusive against all persons and on all issues that were or could have been litigated. (Stats. 1961, ch. 1479, § 1, p. 3332.) Subdivision (b) was added in 1985, specifying a 60-day period for filing the notice of appeal. The 60-day period ran from the notice of entry of judgment or, if—as is frequently the case in validation actions—the judgment was by default, from the entry of judgment itself. The Legislature thereby ensured validation actions would not be subject to the potential 180-day period for appeal from entry of judgment provided by rule 2(a). (Stats. 1985, ch. 229, § 1, p. 1243.) Finally, in 1994, the Legislature again amended section 870, shortening the appeal period further to 30 days from notice of entry of judgment or, in the case of a default judgment, from entry itself. (Stats. 1994, ch. 242, § 1.)

Although rule 2(d) was added only in 1992, rule 40(g) has been unaltered since its adoption in 1943. (See Rules on Appeal, adopted by the Judicial Council on Mar. 30, 1943, eff. July 1, 1943, printed at 22 Cal.2d 1, 28.) During the entire period of section 870's enactment and amendment, therefore, our appellate rules have used "judgment" to include an appealable order. Before section 870 was amended in 1985 to state its own period for filing the notice of appeal, the appeal period in validation actions was governed by rule 2, and the appeal period in validation actions, as in other actions, was thus the same whether the appeal was from a judgment or from an appealable order. The question, then, is whether, when it established (in 1985) and further shortened (in 1994) the separate appeal period for validation actions, the Legislature intended at the same time to create in validation actions, *where none had previously existed,* a different appeal period for judgments than for appealable orders. Neither the legislative history nor the evident purpose of the statutory amendments supports an inference of such intent.[4]

The 1985 amendment (Sen. Bill No. 479) had a simple purpose: "to clarify the time within which an appeal may be taken in a validation proceeding, and thus accelerate the finality of these proceedings." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 479 (1985-1986 Reg. Sess.) p. 2.) The Senate committee analysis noted that validation actions are most commonly

---

[4]We take judicial notice of the legislative history materials supplied by DWR. (Evid. Code, §§ 452, 459.)

used to secure a judicial determination that a government entity's proposed issuance of bonds is valid. The possibility of an appeal from the judgment validating the issue, together with rule 2(a)'s allowance of an appeal within 180 days from entry of judgment if no notice is served or mailed, resulted in a lengthy period of uncertainty, during which underwriters and counsel often felt compelled to wait before issuing the bonds. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 479 (1985-1986 Reg. Sess.) pp. 2-3.) The amendment to section 870 was proposed in order to "reduce the period of 'uncertainty' " created by application of rule 2(a) to validation actions. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 479 (1985-1986 Reg. Sess.) June 11, 1985, p. 2.)

Nothing in the legislative history of the 1985 amendment to section 870 supports an inference the Legislature intended, while accelerating appeals in validation actions, to create a new distinction between judgments as such and appealable orders. The history contains no reference to such a distinction nor any to the purpose of creating such a distinction. Although most summaries of the proposed amendment referred to appeals from "judgments" in validation actions, others, without any special emphasis, referred more broadly to appeals "in a validation proceeding" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 479 (1985-1986 Reg. Sess.) p. 2; Sen. Floor Analysis of Sen. Bill No. 479 (1985-1986 Reg. Sess.) Apr. 11, 1985, p. 1). We place little or no weight on the particular language used in a bill summary that did not actually address the interpretive issue with which we are concerned. (See *California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 648 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Here, however, the *absence* of any reference in the legislative history to a distinct treatment of appealable orders, as opposed to judgments per se, suggests the lawmakers did *not* intend the new provision of section 870 to alter existing practice so as to treat the two classes of appeals distinctly. Under the prior law (rule 2(a)), the appeal period in a validation action was the same whether the appeal was from the judgment or from an appealable order. The available history of the 1985 amendment indicates no intent to change the existing uniformity of treatment, but, rather, the intent simply to clarify and reduce the appeal period in validation actions.

The legislative history of the 1994 amendment to section 870 is similar; it, too, fails to mention any distinction between the treatment of appealable orders and judgments per se. According to the Senate floor analysis, the effect of the 1994 legislation (in addition to expanding chapter 9's application to state agencies) was simply "to change the time allotted to appeal from a validating action from 60 days to 30 days." (Sen. Floor Analysis of Sen.

Bill No. 2107 (1993-1994 Reg. Sess.) Apr. 19, 1994, p. 1.) According to the state Department of Finance, the change would "reduce the time it takes to get bond approval and proceed to market." (Dept. of Finance, Analysis of Sen. Bill No. 2107 (1993-1994 Reg. Sess.) Apr. 12, 1994.)

As to consistency with the legislative purpose, we agree with defendants and KCWA that allowing a longer period for appeal in validation actions from collateral orders than from judgments would be anomalous and confusing, and thus inconsistent with the legislative purpose of ensuring prompt finality in such actions. Under plaintiffs' interpretation of section 870, the period for appealing an order would be 60 days from notice of entry or 180 days from entry if notice was neither served nor mailed. (Rule 2(a).) If the appealable order was entered contemporaneously with the judgment, the period of uncertainty surrounding the action could extend for six months after judgment, instead of the thirty days provided for in section 870. Indeed, in the case of a postjudgment order, appealable under section 904.1, subdivision (a)(2), the period might be longer.

Plaintiffs argue that the lingering possibility of an appeal from a collateral order would not affect the finality or conclusiveness of the *judgment* if no appeal were taken therefrom within 30 days, and hence would not interfere with the legislative purpose of ensuring a prompt and final determination of the validity of agency action. As the present case illustrates, however, appealable orders and judgments in the same case sometimes involve identical or overlapping issues.[5] The possible conflict between a final and unappealed judgment and an appellate reversal on an appealable order involving overlapping issues, or affecting the financial parameters of the agency's proposed action, is an uncertainty that could affect the confidence of others (e.g., bond buyers) in the finality of the validation action. The central purpose of section 870, subdivision (b) is to reduce to 30 days the period of time in which such uncertainty can persist. Plaintiffs' interpretation of the statute, under which the period of uncertainty would be 60 or 180 days, conflicts with that legislative objective.

In summary, section 870, subdivision (b), read in context, fails to state plainly whether its shortened time for appeal in validation actions applies only to the final judgment in such an action or to appealable orders as well. The legislative history indicates the intent of the amendments to section 870,

---

[5]KCWA's motion to quash service of summons, defendants' motion for summary adjudication, the court's order granting the former and its judgment incorporating a ruling on the latter all depended on the same interpretation of section 863, requiring plaintiffs to name and serve the public water contractors as parties.

adding the shortened period, was simply to reduce the period of uncertainty before finality of a validation action, and not to create a new distinction between the appeal periods for appealable orders and judgments. Moreover, the provision of a longer period for appealing collateral orders would be inconsistent with the legislative purpose of ensuring prompt finality. For these reasons, we conclude the trial court and Court of Appeal correctly interpreted section 870, subdivision (b), as applying to appealable orders as well as judgments.

■ We also asked the parties to address whether we should, in this case, follow the general rule of retroactive application of our decisions, or whether "considerations of fairness and public policy" require our decision be given only prospective application. (*Woods* v. *Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455].) We conclude there is no justification here to depart from the general rule of full applicability. Plaintiffs cannot claim reliance on a prior decision of this court or, as in *Woods*, a consistent line of decisions from the Courts of Appeal making our contrary holding "unforeseeab[le]." (*Ibid.*) We recognize the record suggests plaintiffs' motive was not to delay appellate proceedings, but merely to simplify them. Still, an appellant's good intentions cannot excuse noncompliance with the time limits for appeal, which are jurisdictional (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349]); it has been persuasively observed that because a court has no discretion to hear the merits of a case over which it lacks jurisdiction, "a jurisdictional ruling may never be made prospective only." (*Firestone Tire & Rubber Co.* v. *Risjord* (1981) 449 U.S. 368, 379 [101 S.Ct. 669, 676, 66 L.Ed.2d 571]; accord, *Budinich* v. *Becton Dickinson & Co.* (1988) 486 U.S. 196, 203 [108 S.Ct. 1717, 1722, 100 L.Ed.2d 178] [applying to ruling on timeliness of appeal].) Finally, because the legal questions raised by the dismissed appeal overlap substantially with those raised by plaintiffs' still-pending appeal from the final judgment, we are unconvinced dismissal of the appeal from the order quashing service will deprive plaintiffs of " 'any remedy whatsoever.' " (*Woods* v. *Young, supra,* 53 Cal.3d at p. 330.)

## CONCLUSION

The Court of Appeal correctly interpreted section 870, subdivision (b), as setting a 30-day time period for appealable orders as well as judgments in validation actions. Because plaintiffs failed to appeal the order quashing service within that time, the Court of Appeal lacked jurisdiction to hear the appeal and properly dismissed it as untimely without reaching the merits.

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

In this matter, involving a challenge by two citizens organizations and a public agency to the validity of California Water Project contract amendments, known as the Monterey Amendments, the majority create a procedural trap for the unwary, premised on little more than speculation about "legislative intent," by applying the expedited thirty-day period for an appeal from a "judgment" under Code of Civil Procedure section 870 to an appeal from an appealable order. As a result, these plaintiffs will be deprived of a hearing on the merits regarding an issue of public concern.

The relevant procedural history can be summarized as follows. Plaintiffs personally served defendants California Department of Water Resources and the Central Coast Water Authority with a complaint and served additional defendants by publishing a summons directed to the Department of Water Resources in the Sacramento Daily Recorder; plaintiffs also mailed the summons individually to 28 state water contractors. Kern County Water Agency and 12 other specially appearing state water contractors moved to quash service of the summons, pursuant to Code of Civil Procedure section 418.10, on the ground that they should have been named and served as parties defendant. The Department of Water Resources moved for partial summary adjudication of the validation action on similar grounds, contending that Kern County Water Agency and the state water contractors were indispensable parties and plaintiffs had not properly served them within the statute of limitations. The superior court granted the motion to quash. It subsequently granted a motion for summary adjudication of the validation action and entered a final judgment favoring defendants.

Notice of entry of the order quashing service was served on June 24, 1996. Notice of entry of final judgment was filed on August 19, 1996. Plaintiffs appealed both the order and the judgment on August 20, 1996, one day after service of notice of entry of judgment, and fifty-six days after service of notice on the order to quash. In so doing, they complied with the statutory language of Code of Civil Procedure section 870, subdivision (b), by filing their notice of appeal within 30 days after serving notice of entry of the only "judgment" in their validation action. They also complied with the language of California Rules of Court, rule 2(a) by appealing the order quashing service of summons within 60 days after being served with notice of entry.

The majority hold that plaintiffs' appeal of the prejudgment order was untimely under the expedited 30-day period for an appeal from a "judgment" in a validation action under Code of Civil Procedure section 870. They err.

Code of Civil Procedure section 870, subdivision (b), in relevant part provides: "Notwithstanding any other provision of law including . . . any rule of court, no appeal shall be allowed from any judgment entered pursuant to this chapter unless a notice of appeal is filed within 30 days after the notice of entry of the judgment, or, within 30 days after the entry of the judgment if there is no answering party." The literal language of the statute is unambiguous: It refers to an appeal from a "judgment" and sets a time limit for appeal triggered by "notice of entry of the judgment" or, when there is no answering party, "entry" of the judgment. It does not refer to an appeal from an "order."

The majority purport to find the word "judgment," as used in Code of Civil Procedure section 870, ambiguous in its statutory context. It is not. The Code of Civil Procedure defines a "judgment" as follows: "A judgment is the final determination of the rights of the parties in an action or proceeding." (*Id.*, § 577.) It defines an "order" as follows: "Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order." (*Id.*, § 1003.) In the context of the Code of Civil Procedure, then, an appealable order is not a judgment. As the majority concede, they are "analytically distinct classes." (Maj. opn., *ante*, at p. 270.)

The Legislature has maintained this ·analytical distinction in specific provisions in the Code of Civil Procedure concerning time for appeals. Thus, as the majority observe, many such statutes refer separately to judgments and appealable orders. (See, e.g., Code Civ. Proc., §§ 901, 908, 916, 917.1-917.6, 922.) Other such statutes expressly refer to an appeal from a "judgment or order" or expressly define "judgment" to include an appealable order. (See, e.g., *id.*, §§ 906, 664.5, subd. (c), 680.230.) Clearly, if the Legislature wanted to limit the time for appealing "orders" in validation actions, it could have so specified. It did not do so.

The majority conclude that, rather than applying the definition of judgment under the Code of Civil Procedure, we should instead look to rule 2(d) of the California Rules of Court, which defines "judgment" as including an "appealable order." I disagree. California Rules of Court, rule 2(d) provides: "*As used in subdivisions (a) and (c) of this rule,* 'judgment' means 'appealable order' if the appeal is from an appealable order." (Italics added.) It

expressly does not purport to define the word "judgment" as used in any other rule or statute, including Code of Civil Procedure section 870.[1]

If, as the majority assert, the Legislature intended the definition of the word "judgment" in Code of Civil Procedure section 870, subdivision (b), to be governed by rule 2(d) of the California Rules of Court, it could readily have so stated, e.g., by cross-reference thereto. That it did not do so is patent; indeed, the statute applies "[n]otwithstanding any other provision of law *including . . . any rule of court.*" (Code Civ. Proc., § 870, subd. (b), italics added.)

Nor is the majority's excursus into the legislative history of Code of Civil Procedure section 870 either appropriate or helpful. As we have frequently stated, when a statute is clear on its face, resort to the legislative history is unnecessary, and courts should not indulge in it. (*Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 24 [56 Cal.Rptr.2d 706, 923 P.2d 1].) In this instance, moreover, the legislative history offers no guidance whatever; it is silent on the point in question. In my view, we should not rewrite the statute based on speculation about what the Legislature might have done had it actually considered the point.

I also disagree with the majority that treating judgments differently from appealable orders in validation matters would be "anomalous and confusing" or otherwise "inconsistent with the legislative purpose of ensuring prompt finality." (Maj. opn., *ante*, at p. 273.) As this matter illustrates, it may well conserve judicial resources to address appealable orders and judgments in a single appeal, rather than seriatim, as a shortened time for appealable orders would often require. Plaintiffs here simultaneously filed appeals of both the judgment on the motion for summary judgment and the order quashing service of summons on certain parties. As the majority concede, they were apparently motivated by procedural simplicity rather than negligence or a desire for delay. Indeed, the appeals involved closely related procedural issues and were grounded in the same analysis.

The majority do not dispute that plaintiffs reasonably and in good faith relied on an interpretation of the statute consistent with its literal language and the definition of "judgment" under Code of Civil Procedure section 577. That, in my view, underscores the lack of any sound reason to adopt an interpretation of Code of Civil Procedure section 870, subdivision (b), that

---

[1]California Rules of Court, rule 2(a) establishes a rule of general application for the timing of appeals "[e]xcept as otherwise provided by Code of Civil Procedure section 870 or other statute . . . ." As discussed, Code of Civil Procedure section 870 "otherwise provide[s]" a shortened time only for filing an appeal of a "judgment."

deviates from the statutory definition, and thereby deprive plaintiffs of their day in court.[2]

For these reasons, I would reverse the judgment of the Court of Appeal.

Appellants' petition for a rehearing was denied March 11, 1998. Mosk, J., was of the opinion that the petition should be granted.

---

[2]Significantly, defendant Kern County Water Agency has argued that the final disposition of the motion to quash constitutes collateral estoppel on the issues of validation procedure that are the subject of plaintiffs' appeal of the validation judgment. In declining to apply their holding prospectively only—and thereby avoid a harsh result for these plaintiffs that concededly acted reasonably and in good faith—the majority offer only the limited solace that they are "unconvinced [that] dismissal of the appeal from the order quashing service will deprive plaintiffs of ' "any remedy whatsoever." ' " (Maj. opn., *ante*, at p. 274.) It appears that it may well deprive them of a remedy in the validation action.