[No. B141893. Second Dist., Div. Six. Apr. 25, 2001.]

EMBARCADERO MUNICIPAL IMPROVEMENT DISTRICT, Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

782

**COUNSEL**

Goodwin & Associates, Robert E. Goodwin and Magda Lopez for Plaintiff and Appellant.

Stephen Shane Stark, County Counsel, and Alan L. Seltzer, Chief Deputy County Counsel, for Defendant and Respondent County of Santa Barbara.

Hatch & Parent, Stanley M. Roden, Steven A. Amerikaner, Joseph D. Allen and John D. Bakker for Defendants and Respondents Goleta West Sanitary District and Santa Barbara Metropolitan Transit District.

## OPINION

**COFFEE, J.**—Defendant County of Santa Barbara (County) approved a resort hotel development on a 73-acre beachfront parcel north of the City of Santa Barbara. The parcel is within the boundaries of plaintiff Embarcadero Municipal Improvement District (EMID). The County conditioned its approval of the hotel on the annexation of the parcel to two other special districts, defendants Goleta West Sanitary District (Sanitary District) and Santa Barbara Metropolitan Transit District (Transit District). The annexation could only go forward if the County and the affected districts agreed to an allocation of future tax increment generated by the hotel. EMID challenges the amount of tax increment the County allocated to it in the tax allocation agreement. The trial court sustained the demurrers of the defendants without leave to amend on the ground that the action is barred by the statute of limitations in Code of Civil Procedure section 863.

We conclude that the action is barred both by the statute of limitations and EMID's lack of standing. We will affirm the judgment.

### FACTS

EMID was formed in 1960 and contains approximately 1,200 acres. Highway 101 separates the 73-acre parcel from the remainder of EMID's service area. EMID has not provided services to the parcel because, until recently, it was undeveloped. The remainder of the district contains a residential subdivision and agricultural land to which EMID provides or has provided sewer service, parks and recreation, drainage system and buffer-zone maintenance, trail installation and maintenance, insect control, trash collection, cable television installation and emergency services. From 1980 through 1998, EMID received 17.6 percent of the property taxes generated within its boundaries. The taxes are collected on its behalf by the County.

The County Board of Supervisors approved an application to build a resort hotel on the 73-acre parcel. One of the conditions of approval was annexation of the parcel to Sanitary District and Transit District.

On October 28, 1997, the County, Sanitary District and Transit District adopted joint resolutions agreeing to the following allocation of tax increment generated by the hotel for the tax year 1998-1999 and following: 10.26 percent to the County, 6 percent to Sanitary District, 0.354 percent to Transit District, and 1 percent to EMID. Because EMID failed to adopt a resolution agreeing to the property tax exchange, the County determined its property tax allocation. (Rev. & Tax. Code, § 99.01, subd. (a)(4).)[1] After receiving the joint resolutions, the executive officer of SBLAFCO issued a certificate of filing, and SBLAFCO approved the annexation on October 30, 1997.

After the annexation and further negotiations, the County raised EMID's allocation to 6 percent and reduced its share accordingly. Sanitary District refused EMID's request to reallocate its 6 percent share.

EMID filed a petition for writ of mandate (traditional) and complaint for declaratory relief, injunction and constructive trust on October 27, 1999, challenging the tax allocation agreement. EMID asserts that it was not given proper notice of the tax allocation negotiations and that various County officials unlawfully colluded to reduce EMID's rightful share of property tax revenues. The trial court sustained respondents' demurrers without leave to amend, ruling the tax allocation was "inextricably intertwined" with the annexation approval and subject to the 60-day statute of limitations in Code of Civil Procedure section 6.

On this appeal, EMID reiterates the arguments it made in the trial court that its lawsuit is not barred by Code of Civil Procedure section 863 because its challenge is not to the validity of the annexation but rather the tax allocation and the negotiation process that preceded it. It asserts its action is timely because it is governed by the three-year statute of limitations in Code of Civil Procedure section 338 and/or the four-year statute of limitations in Code of Civil Procedure section 343.

We asked the parties to provide supplemental briefing on the issue of EMID's standing to challenge the property tax allocation.

### STANDARD OF REVIEW

When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985)

---

[1]EMID alleges it adopted its own resolution providing for exchange of property tax revenue on November 2, 1997. The resolution is not contained in the record on appeal. Accepting the allegation as true, the resolution has no effect because it was adopted after the Santa Barbara Local Agency Formation Commission (SBLAFCO) approved the annexation.

39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We accept the allegations of the petition and complaint as true unless contradicted by facts of which the court may take judicial notice. (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 842 [73 Cal.Rptr.2d 427].) We disregard legal conclusions. (*Nguyen v. Scott* (1988) 206 Cal.App.3d 725, 733 [253 Cal.Rptr. 800].)

## DISCUSSION

An annexation is a "reorganization" subject to the Cortese-Knox Local Government Reorganization Act of 1985, Government Code section 56000 et seq. (Act). The Act is a broad statutory scheme covering changes of organization of districts as well as cities. Government Code section 56100 declares in part, "this division provides the sole and exclusive authority and procedure for the initiation, conduct and completion of changes of organization and reorganization of cities and districts." Each county has a local agency formation commission (LAFCO) charged with approving or disapproving proposed reorganizations. (Gov. Code, § 56325.)

For annexations involving special districts that will provide services not previously provided to an area, the affected districts must negotiate a tax allocation agreement with the county. (Rev. & Tax. Code, § 99, subd. (b)(4).) If the district(s) and county reach an agreement, it is forwarded to LAFCO. The LAFCO executive officer then issues a certificate of filing that permits the annexation proposal to be set for public hearing and approved. (Former Gov. Code, § 56828, subd. (g), repealed and reenacted as § 56658, subd. (g), without substantive change by Stats. 2000, ch. 761, § 90.) If no tax allocation agreement is negotiated, the executive officer cannot issue a certificate of filing and the annexation proceedings terminate. (Rev. & Tax. Code, § 99, subd. (b)(6).)

### *Standing*

Although not raised by the parties, it is necessary to address the threshold question of whether EMID has standing to challenge the property tax allocation. (See *Pillsbury v. Karmgard* (1994) 22 Cal.App.4th 743, 757-758 [27 Cal.Rptr.2d 491]) [standing to sue goes to the existence of a cause of action].)

Ordinarily, a petitioner seeking a writ of mandate must show that it is beneficially interested in the outcome. (Code Civ. Proc., § 1086; *Grant v. Board of Medical Examiners* (1965) 232 Cal.App.2d 820, 827 [43 Cal.Rptr. 270].) "Beneficially interested" generally means the petitioner "has some

special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].)

In *San Miguel Consolidated Fire Protection Dist. v. Davis* (1994) 25 Cal.App.4th 134 [30 Cal.Rptr.2d 343], eight special districts and several private parties challenged Revenue and Taxation Code section 97.03, which required counties to reduce the amount of property tax revenue allocated to each special district in the prior fiscal year by 35 percent and deposit these nonallocated funds in the counties' educational revenue augmentation fund. The districts asserted that the statute denied them due process and equal protection, was unconstitutionally vague, violated article XIII A of the California Constitution, and impaired their contract rights to property tax revenues. The court rejected these challenges and dismissed the districts from the lawsuit, stating: " '[P]olitical subdivision[s] of state government[] exercis[e] only the powers of the state, granted by the state, created for the purpose of advancing "the policy of the state at large . . . ." ' [Citation.] Respondents correctly note special districts have no 'vested right' to receive property tax revenues [citation] and no 'property interest' in such revenues [citation], because 'as against the state, the county [or district] has no ultimate interest in the property under its care.' [Citations.]" (25 Cal.App.4th at p. 143, italics omitted.)

In its supplemental brief, EMID argues that *San Miguel* is inapplicable because it is not raising a constitutional challenge to any statute, but rather is challenging the implementation of admittedly valid statutes. This is a distinction without a difference for standing purposes. In *Sacramento County Fire Protection Dist. v. Sacramento County Assessment Appeals Bd.* (1999) 75 Cal.App.4th 327 [89 Cal.Rptr.2d 215] (hereafter *Sacramento County Fire Protection Dist.*), the court sustained a demurrer to a petition for writ of mandate brought by a special district challenging the lowering of an assessment on a particular piece of property within its service area. The district argued it was beneficially interested in the assessed valuation assigned to the property because a reduction in assessed value would require refunding millions of dollars previously collected and spent in providing essential public services, would require return of funds budgeted for current services and would degrade the level of future services. The court rejected the argument. "[T]he District does not have 'some special interest to be served or some particular right to be preserved or protected over and above the interest [it holds] in common with the public at large.' [Citation.] The District and its residents, and indeed the public at large, share a common

interest in seeing that the District's public function is effectively funded." (*Id.* at p. 332.)

The court also rejected the district's argument that it had standing in mandate to contend the board wrongly exercised its judgment or discretion in reducing the assessed valuation of the property. "Although the District contends the Board committed a procedural lapse by failing to have the stipulation . . . set forth sufficient facts regarding valuation, the District's position, at its core, is that the Board wrongly exercised its judgment or discretion in reducing the assessed valuation of [the] property. Mandate is usually an inappropriate vehicle to enforce an allegedly wrongful exercise of a discretionary duty. [Citation.] More significantly, the District has neither a 'vested right' nor a 'property interest' in a particular assessed valuation for particular property." (*Sacramento County Fire Protection Dist., supra,* 75 Cal.App.4th at p. 333.) In concluding, the court said: "[T]he question of standing depends on the precise relationship of the district to the property at issue. . . . [F]or example, [if] a state statute directed a county to allocate specifically appropriated tax revenues to a district, the district would have standing to enforce the statute against a recalcitrant county. [Citation.]" (*Id.* at p. 336.)

If the district in *Sacramento County Fire Protection Dist., supra,* 75 Cal.App.4th 327, had no beneficial interest in taxes it had already received and spent, then EMID certainly can have no property interest in any portion of a future tax increment generated by new development to which it did not provide services in the past, nor intends to provide services in the future. The tax allocation agreement does not take away funds that were specifically appropriated for EMID's use. The agreement maintains EMID's historic 17.6 percent share in the property tax revenues generated from the area in which it provides services, and, in the event EMID begins providing services to the 73-acre property, the County is bound to renegotiate EMID's allocation.

The statutory scheme gives the County unfettered discretion to determine EMID's allocated share if EMID refused to agree. This legislative grant of discretion precludes EMID from having a property interest in any of the tax increment. (See *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 182-183 [81 Cal.Rptr.2d 324] [any significant discretion conferred upon a local agency defeats a claim of a property interest].) Therefore, the alleged procedural lapses in the tax negotiation process are in essence a challenge to the County's exercise of discretion. (See *County of Sonoma v. Commission on State Mandates* (2000) 84 Cal.App.4th 1264, 1282

[86 Cal.App.4th 25b, 101 Cal.Rptr.2d 784] ["When acting to allocate taxes among various entities, the Legislature is acting within its particular sphere of power and discretion"].)

*Statute of Limitations*

■ Because we have determined that EMID lacks standing, the statute of limitations issue is moot. (*Purcell v. Colonial Ins. Co.* (1971) 20 Cal.App.3d 807, 814 [97 Cal.Rptr. 874].) We will consider the issue nonetheless because it is a matter of continuing importance and interest. (*Nebel v. Sulak* (1999) 73 Cal.App.4th 1363, 1368 [87 Cal.Rptr.2d 385].)

■ Whether a statute of limitations applies ordinarily is a question of law. (*People ex rel. Dept. of Conservation v. Triplett* (1996) 48 Cal.App.4th 233, 246 [55 Cal.Rptr.2d 610].) ■ The gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23 [32 Cal.Rptr.2d 244, 876 P.2d 1043]; see also *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 468 [164 Cal.Rptr. 420] ["it is the nature of the governmental action being challenged rather than the basis for the challenge that determines the procedure to be utilized"].)

■ Government Code section 56100 states: "[T]his division provides the sole and exclusive authority and procedure for the initiation, conduct, and completion of changes of organization and reorganization of cities and districts." "An action to determine the validity of any change of organization or reorganization completed pursuant to this division shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." (Gov. Code, § 56103.)

■ "[T]he purpose of the validation statutes is to provide a simple and uniform method for testing the validity of government action." (*Moorpark Unified School Dist. v. Superior Court* (1990) 223 Cal.App.3d 954, 960 [273 Cal.Rptr. 18].) " 'A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency and on all other persons.' " (*Committee for Responsible Planning v. City of Indian Wells* (1990) 225 Cal.App.3d 191, 197 [275 Cal.Rptr. 57].) In the context of a municipal annexation, the court in *Hills for Everyone v. Local Agency Formation Com., supra,* 105 Cal.App.3d 461 listed the reasons for requiring in rem actions: "Important policy considerations underlie the . . . requirement that a completed annexation be tested by an in rem proceeding under the validating statute. A uniform

procedure for prompt resolution of the validity of a completed annexation by an in rem action is necessary in order to settle any questions respecting the city's jurisdiction over the annexed territory, including any uncertainties respecting the applicable land use regulations, or the city's responsibility to provide police, fire and other municipal services to the area. The procedure prescribed by the validating statute assures due process notice to all interested persons and settles the validity of the annexation once and for all by a single lawsuit." (*Id.* at pp. 467-468, fn. omitted.)

The validating statutes contain a 60-day statute of limitations to further the important policy of speedy determination of the public agency's action. (Code Civ. Proc., § 863; *Millbrae School Dist. v. Superior Court* (1989) 209 Cal.App.3d 1494, 1497 [261 Cal.Rptr. 409]; see also *Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 273 [70 Cal.Rptr.2d 635, 949 P.2d 488] ["allowing a longer period for appeal in validation actions from collateral orders than from judgments would be anomalous and confusing, and thus inconsistent with the legislative purpose of ensuring prompt finality in such actions"].)

No reported case has addressed the issue of whether a challenge to an intermediate step in an approval process governed by the validating statutes can be brought more than 60 days after the approval itself has become final. However, the declared purpose of the Act and cases interpreting it, as well as cases interpreting the validating statutes in other contexts, make clear that EMID cannot challenge an intermediate step in the annexation process long after the validity of the annexation itself has become conclusive.

In *Hills for Everyone v. Local Agency Formation Commission of Orange County, supra,* 105 Cal.App.3d 461, the court held that a petition for writ of mandate could not be used to challenge a completed annexation, stating "the only method of testing the validity of the annexation, whatever the basis for the challenge, was either an action in compliance with the validating statute or a quo warranto proceeding by the Attorney General." (*Id.* at p. 467.)

The complaint in *Plunkett v. City of Lakewood* (1975) 44 Cal.App.3d 344 [116 Cal.Rptr. 885] contains allegations directed to a redevelopment plan similar to those made by EMID. In that case, the petitioner argued that its action challenging a redevelopment plan adopted pursuant to the California Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) was not subject to the 60-day statute of limitations in Code of Civil Procedure section 863 (applicable to redevelopment plan challenges under Health & Saf. Code, § 33501), because he was not challenging the facial validity of

the redevelopment plan but instead was alleging that the plan was a fraud perpetrated on the city's taxpayers by members of the city council in collusion with a developer with the intent to aid private interests with public funds. He asserted that the one-year statute of limitations in Code of Civil Procedure section 526a applied because the complaint challenged an illegal expenditure of public funds. The court disagreed, stating: "Whether Plunkett claims the city council was wrong by mistake or wrong by intent, in either case he is contesting the validity of the plan, the adoption of the plan, and the findings supporting adoption of the plan. . . . Plunkett's complaint does not allege that the asserted acts of fraud prevented him from challenging the plan in the manner authorized by law. If suitors could avoid the requirements of [Health and Safety Code] section 33500 merely by adding allegations of fraud to their complaints, the section would be rendered meaningless and its purpose lost." (*Plunkett*, at p. 347; see also *Friedland v. City of Long Beach*, *supra*, 62 Cal.App.4th at pp. 849-850 [petition for writ of mandate challenging illegal expenditure of public funds and not attempting to set aside validation judgment precluded by validating statutes].)

In *Graydon v. Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631 [164 Cal.Rptr. 56], the court held that a petition for writ of mandate could not be used to challenge the negotiation process leading up to approval of a contract between a redevelopment agency and a developer. It found the challenge was barred by the statute of limitations in Code of Civil Procedure section 863, because the negotiation of the contract was an "integral part" of the whole method of financing the public costs associated with the retail center. (104 Cal.App.3d at p. 645; see also *Bernardi v. City Council* (1997) 54 Cal.App.4th 426, 438 [63 Cal.Rptr.2d 347] [court held action barred by statute of limitations where challenges brought against matters that were "part and parcel of" and "inextricably intertwined with" and "integral parts of" the validated judgment].)

EMID cites no cases where a court has permitted an intermediate step in a completed reorganization to be challenged by a petition for writ of mandate after the expiration of the 60-day statute of limitations in Code of Civil Procedure section 863. In *Greenwood Addition Homeowners Assn. v. City of San Marino* (1993) 14 Cal.App.4th 1360, 1374-1375 [18 Cal.Rptr.2d 350], the court emphasized the importance of reaching consensus as to tax allocation prior to LAFCO approval of a change in organization: "[I]n enacting [Revenue and Taxation Code] section 99, subdivision (b)(4), the Legislature underscored and addressed the importance of reconciling the revenue exchange aspect at the outset—'so that all parties can know where they stand.' [Citation.] [¶] . . . [¶] . . . [S]ince its enactment as a part of that legislation,

[Revenue and Taxation Code] section 99 has always placed property tax revenue exchange agreement as an initial hurdle. . . . [¶] In sum, the Legislature has made it clear that, in pursuit of the beneficial purposes of reorganization, resolution of the fundamental fiscal question is a precondition, and this resolution must be mutual and consensual."

Those cases where the courts have permitted lawsuits brought beyond the 60-day period alleged illegal implementation of a validated action (see, e.g., *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335 [85 Cal.Rptr. 149, 466 P.2d 693] [taxpayer action permitted that attacked expenditures not authorized by validated agreement]; *Starr v. City and County of San Francisco* (1977) 72 Cal.App.3d 164 [140 Cal.Rptr. 73] [taxpayer action permitted to challenge project lease and repayment contract because they contained new and materially different terms than validated financing agreement]) or municipal contracts not subject to the validating statutes (*Walters v. County of Plumas* (1976) 61 Cal.App.3d 460 [132 Cal.Rptr. 174]).

We have found no authority supporting EMID's attempted distinction between those cases where a validation judgment was entered and here, where the annexation was validated by doing nothing. This is a recognized alternative provided by the validating statutes. (*Friedland v. City of Long Beach, supra,* 62 Cal.App.4th at p. 851.) Moreover, nothing in the complaint indicates that EMID was prevented from bringing a timely reverse validation action. (*Planning & Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 922 [84 Cal.App.4th 315a, 100 Cal.Rptr.2d 173].)[2]

The tax allocation agreement preexisted approval of the annexation and sufficient facts and circumstances existed to bring a challenge to the agreement during the 60 days following approval of the annexation. Therefore, Code of Civil Procedure section 870 precludes EMID from contending that the tax allocation agreement is invalid at this late date. (*Bernardi v. City Council, supra,* 54 Cal.App.4th at p. 441; *Starr v. City and County of San Francisco, supra,* 72 Cal.App.3d at p. 179.)

EMID points out that former Government Code section 56842, subdivision (h) (repealed and reenacted as § 56810, subd. (h), without substantive change by Stats. 2000, ch. 761, § 122) provides a three-year statute of limitations for challenging a tax allocation agreement adopted prior to a

---

[2]EMID admits it had actual notice of the SBLAFCO proceedings. (See *Friedland v. City of Long Beach, supra,* 62 Cal.App.4th at p. 850 [where party has actual notice, public agency is not estopped from asserting bar of statute of limitations].)

city's incorporation. EMID argues that this shows a legislative intent to subject challenges to tax allocation agreements adopted for other reorganizations to a three-year statute of limitations rather than the 60-day statute of limitations in Code of Civil Procedure section 863. We disagree. Under well-established rules of statutory construction, where an exception to a general rule is specified by statute, other exceptions cannot be implied or presumed (*expresio unius est exclusio alterius*). (*In re Lance W.* (1985) 37 Cal.3d 873, 888 [210 Cal.Rptr. 631, 694 P.2d 744].) In other words, a statute that enumerates things upon which it operates is to be construed as excluding from its effect all those things not expressly mentioned. (*Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1126 [1 Cal.Rptr.2d 189].) These principles apply to annexation proceedings. (See *City of Port Hueneme v. City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318] [" 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed' "].) Former Government Code section 56842, subdivision (h), by its terms applies only to city incorporations; we cannot imply or presume that it extends to the many other types of changes of organization covered by the Act.

EMID argues that its constructive trust cause of action is governed by Code of Civil Procedure sections 338 or 343 and is timely. Not so. A constructive trust is not a substantive device but merely a remedy, and an action seeking to establish a constructive trust is subject to the limitation period of the underlying substantive right. If that substantive right is barred by the statute of limitations, the remedy necessarily fails. (*Davies v. Krasna* (1975) 14 Cal.3d 502, 516 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) EMID's declaratory relief cause of action is barred for the same reason. (See *North Star Reinsurance Corp. v. Superior Court* (1992) 10 Cal.App.4th 1815, 1822 [13 Cal.Rptr.2d 775] [statute of limitations governing request for declaratory relief is that applicable to an ordinary legal or equitable action based on the same claim].)

The judgment is affirmed. Respondents are to recover costs.

Yegan, Acting P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2001, George, C. J., and Werdegar, J., did not participate therein.