[No. H027562. Sixth Dist. Sept. 20, 2006.]

BENJAMIN KAATZ, Plaintiff and Appellant, v.
CITY OF SEASIDE et al., Defendants and Respondents.

14

18

---

## COUNSEL

Law Offices of Jay P. Renneisen, Jay P. Renneisen; Law Offices of Heidi K. Whilden, Heidi K. Whilden: Law Offices of Edward P. Dudensing, Edward P. Dudensing; Law Offices of Michael J. Whilden and Michael J. Whilden for Plaintiff and Appellant.

Perry & Freeman, Donald G. Freeman; Goldfarb & Lipman, Claudia J. Martin and Lee C. Rosenthal for Defendant and Respondent City of Seaside..

Horvitz & Levy, Julie L. Woods, Barry R. Levy; Cox, Castle & Nicholson and Kenneth B. Bley for Defendant and Respondent K&B Bakewell Seaside Venture.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendants and Respondents.

Sheppard, Mullin, Richter & Hampton, David P. Lanferman and Brenna E. Moorhead for California Building Industry as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**DUFFY, J.**—Code of Civil Procedure sections 860 through 870 (hereafter the validation statutes)[1] provide an expedited process by which certain public agency actions may be determined valid and not subject to attack. The public agency may validate its action by either active or passive means. It may initiate an action in rem to establish the validity of the matter. (§ 860.) Alternatively, the agency may do nothing, and if no "interested person" brings suit to determine the validity of the public agency's action within 60 days (§ 863), the action is deemed valid. (§ 869.) But not all actions of a public agency are subject to validation, and the present case requires us to determine the limits of the validation statutes.

Benjamin Kaatz brought suit as a taxpayer to challenge certain actions of the City of Seaside (City) arising out of its purchase and sale of 105 acres of residential property that were formerly part of the Fort Ord military base. Kaatz claimed, among other things, that immediately after the City purchased the property from the United States Army in July 2002, it conveyed the entire acreage to a developer, K&B Bakewell Seaside Venture, LLC (K&B Bakewell), for a fraction of its fair market value. Following motions for judgment on the pleadings and for dismissal filed by K&B Bakewell (joined in by the City), the suit was dismissed on the basis that it was time-barred. In so doing, the court concluded that (1) the challenged purchase and sale of property were matters that were embraced by Government Code section 53511's language[2] permitting a local agency to bring a proceeding under the validation statutes to "determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness," and (2) Kaatz had not filed suit to determine the validity of the City's actions within 60 days as required by the validation statutes.

As a threshold matter, we will address K&B Bakewell's motion to dismiss the appeal—joined in by the City—on the basis that the notice of appeal was not filed within 30 days of entry of judgment as provided in section 870, subdivision (b) (section 870(b)). We will conclude that the notice of appeal was timely filed; section 870(b) does not apply here, because the appeal is not challenging a "judgment entered pursuant to" the validation statutes. We will then address the primary issue on appeal, namely, whether the City actions

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] After the motion to dismiss was heard and decided, Government Code section 53511 was amended; the text of the former statute that is at issue here remained unchanged but was designated as subdivision (a) in the amendment. (See Stats. 2004, ch. 470, § 3.) Unless otherwise specified, we will refer to Government Code section 53511 as it existed before its 2004 amendment.

challenged by Kaatz were ones that were subject to validation under the validation statues. We will hold, based upon the limited scope of the validation statutes, that the City's conveyance of the property—along with the City's prior execution of the underlying contract with the developer concerning the potential acquisition and sale of the property—was not subject to validation. We will therefore find that the trial court erred in its application of the 60-day statute of limitations for validation proceedings and consequent dismissal of the action. Accordingly, we will reverse the judgment entered on that dismissal.

## PROCEDURAL HISTORY

### I. *Early Proceedings*

On May 16, 2003, Kaatz filed a complaint (captioned "Complaint by Taxpayer for Injunctive Relief [CCP § 526a]")[3] alleging eight claims for relief against the City.[4] Kaatz alleged that he resided in the City and had paid real property taxes to the City within one year before the action was initiated. Kaatz challenged, among other things, the validity of a deed by which the City conveyed property known as the "Hayes Park Property" (hereafter Hayes Park or Property) to K&B Bakewell.

Kaatz sought an order pendente lite enjoining the City from granting any construction permits and from approving any final parcel maps for Hayes Park. On August 7, 2003, after extensive briefing and argument, the court granted a preliminary injunction preventing the City from "taking any action with regard to approval of the final subdivision map" for the Property.[5]

One day after granting the preliminary injunction, the court granted Kaatz's motion for leave to amend the complaint to add K&B Bakewell as a defendant. And less than a week later, K&B Bakewell filed a motion for an

---

[3] Section 526a reads in part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a . . . city . . . of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

[4] The action also named Daniel E. Keen as a defendant in his official capacity as city manager. City and Keen were and are represented by the same counsel and their positions concerning the litigation do not diverge. We will therefore for simplicity refer to them collectively as the "City."

[5] In so ruling, the court found that there was a reasonable probability that Kaatz would prevail on his claims that the City had violated (1) the Surplus Land Act (Gov. Code, § 54220 et seq.), and (2) Government Code section 37364 by selling the Property for less than its fair market value.

order vacating the preliminary injunction, or, in the alternative, an order increasing the amount of the bond from $1,000 to $5,320,000. K&B Bakewell argued that it—as well as buyers of homes who had already planned to move into the development—would suffer substantial injury if the injunction were allowed to remain in effect. Over Kaatz's opposition, the court vacated the preliminary injunction on August 15, 2003, on the condition that K&B Bakewell's parent, KB Home, execute an enforceable guaranty of any monetary judgment imposed against K&B Bakewell.[6]

## II. *Second Amended Complaint*

The second amended complaint was the operative pleading addressed in K&B Bakewell's alternative motions to dismiss and for judgment on the pleadings.[7] Kaatz asserted eight causes of action against all defendants, each claim arising generally out of the City's purchase of Hayes Park from the United States Army and the City's immediate resale of that Property to K&B Bakewell. As to the majority of the claims, Kaatz cited as authority the statute permitting suit by a taxpayer to prevent the "illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a . . . city" under section 526a. (See fn. 3, *ante.*)

The relevant allegations of the second amended complaint consisted of the following: (1) Following the enactment of the Defense Base Closure and Realignment Act of 1990, as amended,[8] the United States closed the Fort Ord military base located in Monterey County; (2) The federal government was

---

[6] In its motion—countering Kaatz's argument that an injunction was needed to prevent the possibility that K&B Bakewell (a limited liability corporation) would dissipate the profits it had obtained from purchasing and developing the Property—KB Home (a corporation listed on the New York Stock Exchange) offered to guarantee any unsatisfied money judgment that might ultimately be entered against K&B Bakewell.

[7] K&B Bakewell's alternative motions to dismiss and for judgment on the pleadings attacked Kaatz's first amended complaint. (The filing of K&B Bakewell's motions predated the filing of Kaatz's motion for leave to file the proposed second amended complaint, wherein Kaatz sought to amend the prayer.) But at the hearing on K&B Bakewell's alternative motions, all parties stipulated that Kaatz could file the amended pleading and that the court could consider K&B Bakewell's motions as applying to the second amended complaint. The second amended complaint did not alter the material allegations of the first amended complaint.

[8] See Public Law No. 101-510 section 2905(b)(2)(D) (Nov. 5, 1990), 104 Statutes at Large 1814, set forth as subsequently amended as note following section 2687 of title 10 United States Code. The Defense Base Closure and Realignment Action of 1990 (Pub. L. No. 101-510), as subsequently amended, is found in the notes following title 10 United States Code section 2687.

authorized to sell as surplus property (under the National Defense Authorization Act for Fiscal Year 1996)[9] portions of the former Fort Ord, including Hayes Park; (3) On or about May 4, 1998, the City, pursuant to its council's resolution authorizing such action, entered into an agreement with K&B Bakewell concerning Hayes Park entitled "Land Disposition Agreement" (LDA); (4) On or about July 25, 2002, the federal government conveyed the Property by quitclaim deed to the City for a purchase price of $5.1 million; (5) Also on or about July 25, 2002, the City transferred all of its interest in Hayes Park to K&B Bakewell for $5,950,000; (6) The City's transfer of the Property was in contravention of the City Council's resolution approving the LDA that the Property "not be sold for other than 'fair market value,' " was a breach of the City's "statutory duty to make the surplus property available for affordable housing," was done "without ever considering any other bid, proposal, or offer for the [Property]," and was "in violation of the constitutional and statutory prohibition against cities giving away public property"; and (7) As a result, K&B Bakewell stood to "pocket, in addition to standard profit on the housing construction, an approximately $115 million pure cash windfall representing the value of the [Property] purportedly purchased from the City . . . for a fraction of its fair market value."

The first cause of action sought to invalidate the deed of the Property from the City to K&B Bakewell. Kaatz alleged that the alleged transfer was void because the LDA, as approved by the City Council, required that Hayes Park be sold at its fair market value.

The second cause of action likewise sought to void the transfer of Hayes Park to K&B Bakewell—and to invalidate the LDA—on the ground that the City, both through its execution of the LDA in 1998 and its conveyance of the Property in July 2002, violated the Surplus Land Act (Gov. Code, § 54220 et seq.).[10] Kaatz alleged that that statute required the City to provide statutory

---

[9] See Public Law No. 104-106, sections 3411 through 3415 (Feb. 10, 1996) 110 Statutes at Large 186, 631–635, reprinted at historical and statutory notes of title 10 United States Code (1998 ed.) following section 7420.

[10] "The Legislature reaffirms its declaration that housing is of vital statewide importance to the health, safety, and welfare of the residents of this state and that provision of a decent home and a suitable living environment for every Californian is a priority of the highest order. The Legislature further declares that there is a shortage of sites available for housing for persons and families of low and moderate income and that surplus government land, prior to disposition, should be made available for that purpose." (Gov. Code, § 54220, subd. (a).) "Any agency of the state and any local agency disposing of surplus land shall, prior to disposing of that property, send a written offer to sell or lease the property as follows: [¶] (a) A written offer to sell or lease for the purpose of developing low- and moderate-income housing shall be sent to any local public entity as defined in Section 50079 of the Health and Safety Code, within whose jurisdiction the surplus land is located. Housing sponsors, as defined by Section 50074 of the Health and Safety Code, shall, upon written request, be sent a written offer to sell or lease surplus land for the purpose of developing low- and moderate-income housing. . . . With

notice to specified public agencies prior to selling or otherwise disposing of surplus public land acquired from the federal government to facilitate that law's goal of making such surplus land available for affordable housing.

Kaatz alleged as a third cause of action that the deed of the Property to K&B Bakewell and the underlying LDA were void because they constituted a sale of City property below fair market value and did not fall within the statutory exception of Government Code section 37364, under which a city may sell its land for below fair market value where the sale's specific purpose is to create affordable housing.[11]

The fourth cause of action claimed that the LDA required K&B Bakewell, in conjunction with acquiring the Property, to construct two public works projects to be located on City-owned land outside of Hayes Park, namely, a 4,000 square foot building and 10 housing units for homeless persons. Kaatz alleged that the LDA was void because the City failed to solicit competitive bids for construction of these two public works, as required under Public Contract Code section 20162.

Under the fifth cause of action, Kaatz similarly sought avoidance of the LDA. He alleged that, notwithstanding the LDA's recital that it was approved after a " 'duly noticed public hearing,' " no valid public hearing occurred, because "the terms and conditions of the LDA were modified on the very day the LDA Public Hearing was held."

The sixth cause of action alleged that the California Constitution (art. XVI, § 6) "prohibits public entities from giving away public property." Kaatz asserted that, because the City sold Hayes Park to K&B Bakewell for 5 percent of its fair market value, the LDA and deed were void because the City's actions were unconstitutional.

---

respect to any offer to purchase or lease pursuant to this subdivision, priority shall be given to development of the land to provide affordable housing for lower income elderly or disabled persons or households, and other lower income households." (Gov. Code, § 54222.)

[11] "The Legislature reaffirms its finding that the provision of housing for all Californians is a concern of vital statewide importance. . . . [N]otwithstanding any provision of a city's charter, or any other provision of law, whenever the legislative body of a city determines that any real property or interest therein owned or to be purchased by the city can be used to provide housing affordable to persons and families of low or moderate income, as defined by Section 50093 of the Health and Safety Code or as defined by the United States Department of Housing and Urban Development or its successors, and that this use is in the city's best interests, the city may sell, lease, exchange, quitclaim, convey, or otherwise dispose of the real property or interest therein at less than fair market value, or purchase an interest in the real property, to provide that affordable housing under whatever terms and conditions the city deems best suited to the provision of such housing." (Gov. Code, § 37364, subd. (a).)

The seventh cause of action alleged that the City's actions in transferring the Property constituted a "waste of public estate, property and funds." Kaatz claimed that the LDA and deed to K&B Bakewell were therefore void.

Finally, Kaatz alleged in the eighth cause of action that there was a present controversy that required (under § 1060) a judicial declaration of the parties' rights and duties under the LDA and deed conveying the Property to K&B Bakewell.

### III. *Motion To Dismiss or Motion for Judgment on the Pleadings*[12]

On November 14, 2003, K&B Bakewell filed a motion to dismiss, or, in the alternative, a motion for judgment on the pleadings. K&B Bakewell argued that the actions of the City being challenged—the execution of the LDA and the sale of the Property pursuant to that agreement—were subject to the validation statutes, and that because Kaatz had not brought a validating proceeding within 60 days, his action was time-barred. The City filed a joinder, and Kaatz opposed K&B Bakewell's alternative motions.

After extensive briefing (including several posthearing briefs) and argument, and after submission of the matter, on March 12, 2004, the court granted the motion to dismiss. It concluded that the City's challenged actions were subject to validation and accordingly Kaatz's claims were barred by the 60-day statute of limitations under the validation statutes.[13]

Judgment was entered on the dismissal on April 1, 2004. K&B Bakewell gave written notice of entry of the judgment on April 5, 2004.

### IV. *Postjudgment Motions*

On April 20, 2004, Kaatz filed alternative motions for new trial or to set aside and vacate the judgment. Kaatz's principal argument was that the court, in ruling on the alternative motions to dismiss or for judgment on the pleadings, granted the motion for judgment on the pleadings; the court therefore should have granted leave to amend. Kaatz's alternative motions for

---

[12] To avoid repetition, we present further particulars regarding K&B Bakewell's alternative motions to dismiss or for judgment on the pleadings in part III.B. of the Discussion, *post*.

[13] After the alternative motions to dismiss or for judgment on the pleadings were heard but before the motion to dismiss was granted, K&B Bakewell filed a demurrer to the second amended complaint. The demurrer challenged each cause of action on grounds other than Kaatz's failure to bring a timely validation proceeding under the validation statutes. Because granting the motion to dismiss disposed of the entire action, the court never ruled on the merits on K&B Bakewell's demurrer. The dismissal order specifically noted that in light of its ruling on the motion to dismiss, the court took "no action with respect to [K&B Bakewell's] Demurrer."

new trial or to set aside the judgment—opposed by K&B Bakewell and the City (hereafter sometimes collectively respondents)—were denied by the court.

On June 4, 2004, Kaatz filed a notice of appeal from the judgment of dismissal and from the order denying the alternative motions for new trial or to set aside the judgment. K&B Bakewell filed a motion to dismiss the appeal, and the City joined in that motion. After considering Kaatz's opposition and K&B Bakewell's reply, this court ordered that the dismissal motion be heard concurrently with the appeal.

## DISCUSSION

### I. *Issues on Appeal*

Kaatz contends that the court erred in dismissing the action. He asserts that the action was not brought under, and was thus not subject to, a 60-day statute of limitations specified in the validation statutes. Kaatz argues further that his appeal was timely.

### II. *Timeliness of Notice of Appeal*

Because the timely filing of a notice of appeal is a jurisdictional prerequisite for our review of this case (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 [61 Cal.Rptr.2d 166, 931 P.2d 344]), we first address respondents' motion to dismiss the appeal. Here, the notice of appeal was filed on the 60th day after K&B Bakewell mailed a notice of entry of judgment. Respondents contend that the notice of appeal was not timely filed because, pursuant to section 870(b), "no appeal shall be allowed from any judgment entered pursuant to this chapter [9, sections 860 through 870] unless a notice of appeal is filed within 30 days after the notice of entry of the judgment." Kaatz responds that he is not challenging by appeal a "judgment entered pursuant to" the validation statutes. Therefore (he asserts), his notice of appeal was timely filed under rule 2(a)(2) of the California Rules of Court, which specifies that the "[n]ormal time" for filing an appeal from a judgment is "60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment."

The motion to dismiss the appeal presents an interesting conundrum. Respondents assert that since the trial court concluded that the validation statutes applied to Kaatz's claims—and, accordingly it dismissed the action—the judgment entered on the dismissal was clearly one "entered pursuant to" the validation statutes. Therefore (they argue), the 30-day appeal period of

section 870(b) applies, and this court must dismiss the appeal without regard to its underlying merits. Thus, respondents urge that we must dismiss the appeal because the trial court ruled that the action was subject to the validation statutes, regardless of whether that conclusion was correct. Naturally, Kaatz argues that we must consider the underlying merits to determine whether the action was governed by the validation statutes before we may consider whether the notice of appeal was timely filed. We concur with Kaatz's position.

We are directed to no authority squarely holding that where the trial court concludes that an action is one for which a special statute applies for purposes of calculating the timeliness of a notice of appeal—and the appellant disputes that characterization of the action—the appellate court must accept without question the lower court's conclusion. Nor do we find the absence of such authority surprising; the proposition respondents advance seemingly suggests an abdication of the appellate court's responsibilities.

Respondents, however, urge that dismissal of the appeal here is supported by *Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264 [70 Cal.Rptr.2d 635, 949 P.2d 488] (*Planning & Conservation League I*), a case in which the Supreme Court held that a notice of appeal based upon an appealable order under the validation statutes was untimely. There, the Supreme Court noted that the underlying facts and the merits of the dispute were not relevant to its determination of the timeliness of the appeal. (*Id.* at p. 267.) But in that case, there was no dispute between the parties that the underlying action *was* brought under the validation statutes. Instead, the court only addressed "the narrow procedural issue" ( *ibid.*) of whether section 870(b) applied not only to judgments entered in validating proceedings, but to appealable orders as well. Thus, the court was not faced with the unusual procedural setting present here: an appeal from the dismissal of an action in which the plaintiff (Kaatz) did *not* invoke the validation statutes—and one in which, parenthetically, the public agency defendant (City) only belatedly asserted the statutes' applicability—but the trial court concluded that the action was subject to the validation statutes. *Planning & Conservation League I* does not suggest dismissal of the appeal in this case.[14]

Kaatz cites three cases that he contends support his position that we may consider the underlying merits of the appeal to decide whether the shortened appeal period of section 870(b) applies. (See *New Davidson Brick Co. v. County of Riverside* (1990) 217 Cal.App.3d 1146 [266 Cal.Rptr. 432];

---

[14] Additionally, as we will discuss (see pt. III.D.3.b., *post*), the Supreme Court's discussion of the legislative history of the 1985 and 1994 amendments to section 870 suggests that the validation statutes do not apply to the claims asserted by Kaatz here. (See *Planning & Conservation League I, supra,* 17 Cal.4th at pp. 271–273.)

*Bliler v. City of San Diego* (1976) 61 Cal.App.3d 530 [132 Cal.Rptr. 185]; *Vogel v. City of Millbrae* (1959) 167 Cal.App.2d 403 [334 P.2d 620].) These cases have some bearing on our inquiry; in each of them, the appellate court examined the substance of the plaintiff's claims to determine whether the action was one that, in fact, invoked the statute that provided for a shortened appeal period. (See, e.g., *New Davidson Brick, supra,* at p. 1151.) But while they are somewhat supportive of our conclusion that, in resolving the motion to dismiss the appeal, we must consider whether the validation statutes apply to Kaatz's claims, these cases are by no means dispositive. In none of the cases did the trial court determine that the action was in fact subject to a statute that invoked a shortened appeal period. Thus, the appellate courts were not addressing the precise question here: Are we precluded from reviewing the trial court's specific finding that the case was subject to the validation statutes, thereby rendering applicable, ipse dixit, the shortened appeal period of section 870(b)?

We conclude that in order to determine the timeliness of the appeal notice, under the circumstances here, we must determine if the underlying action was, in fact, a proceeding under the validation statutes. This requires us, of necessity, to resolve the principal issue of the appeal itself. A contrary conclusion, we believe, would yield an anomalous and unjust result. It would preclude review on the merits of a trial court decision by having the appellate court assume the applicability of a statute providing for a shortened appeal period without regard to whether that assumption was correct. Our view that we must consider whether Kaatz's action was, in fact, subject to the validation statutes—rather than agreeing blindly with the trial court on this point—is consistent with "the well-established policy, based upon the remedial character of the right of appeal, of according that right in doubtful cases 'when such can be accomplished without doing violence to applicable rules.' [Citation.]" (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349].)[15]

We foreshadow the balance of our decision by summarily noting our conclusion below that the City's conduct challenged by Kaatz was *not* subject to the validation statutes. The 30-day appeal period under section 870(b) was therefore inapplicable. The appeal was filed within 60 days of the mailing by a party of the notice of entry of judgment as required by California Rules of Court, rule 2(a)(2). We thus deny respondents' motion to dismiss.

---

[15] In noting this principle, we acknowledge that it is most commonly enunciated in cases where the appellant has filed a timely notice of appeal that is claimed to be procedurally defective in some respect, not in instances where there is a controversy concerning whether the normal time for filing an appeal under California Rules of Court, rule 2(a) applies. (See, e.g., *Rapp v. Golden Eagle Ins. Co.* (1994) 24 Cal.App.4th 1167 [30 Cal.Rptr.2d 126] [motion to dismiss appeal denied where notice was timely but check accompanying it for filing fee and deposit was insufficient].)

III. *The Order Dismissing the Action*

A. *Standard of Review*

Kaatz argues that the trial court's dismissal of the action is subject to de novo review. Citing *McKay v. County of Riverside* (1959) 175 Cal.App.2d 247, 249 [345 P.2d 949], he asserts that when the dismissal motion challenged the pleadings, the order of dismissal should be treated on appeal as if it had been an order sustaining a demurrer without leave to amend. Of course, under well-settled principles, "[t]he function of a demurrer is to test the sufficiency of the complaint as a matter of law, and it raises only a question of law. [Citations.] On a question of law, we apply a de novo standard of review on appeal. [Citation.]" (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420 [13 Cal.Rptr.3d 766].) Respondents do not discuss the applicable standard of review.

It is settled that one method of asserting a challenge that an action was untimely filed under the validation statutes is by the method employed here, namely, a motion to dismiss. (See *Smith v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 415 [128 Cal.Rptr. 572]; *Phillips v. Seely* (1974) 43 Cal.App.3d 104, 109 [117 Cal.Rptr. 863].) A defense that the statute of limitations bars a validation proceeding, however, may also be asserted by demurrer. (See *Meaney v. Sacramento Housing & Redevelopment Agency* (1993) 13 Cal.App.4th 566, 572 [16 Cal.Rptr.2d 589]; see also *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 995 [90 Cal.Rptr.2d 665] [complaint barred on its face by statute of limitations subject to general demurrer].) And "[w]hether a statute of limitations applies ordinarily is a question of law." (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 789 [107 Cal.Rptr.2d 6].)

As we will discuss, the principal issue here is whether the matters alleged in Kaatz's second amended complaint were subject to the validation statutes, thereby rendering the 60-day statute of limitations provided in those statutes applicable. This issue, in turn, is resolved through interpreting Government Code section 53511 and the validation statutes. As such, the issue here is one of law requiring our independent review. (*Planning & Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 906 [100 Cal.Rptr.2d 173] (*Planning & Conservation League II*).)

We review the court's order dismissing Kaatz's action with the above standard of review in mind.

### B. *K&B Bakewell's Motion to Dismiss*

The essential position advanced in K&B Bakewell's alternative motions to dismiss and for judgment on the pleadings was that Kaatz's claims were based on a challenge to the validity of the LDA, executed in May 1998. The City's execution of the LDA was a "contract" such that the City, as a local public agency, had the right to bring an action to determine the LDA's validity under former Government Code section 53511, and under the validation statutes. Therefore (K&B Bakewell argued) Kaatz was required to have filed his complaint within 60 days of the LDA's execution in May 1998; Kaatz's action (filed in May 2003) was initiated nearly five years too late. As a fallback position, K&B Bakewell argued that if the suit were construed simply as a challenge to the City's sale of the Property, it would nonetheless be time-barred; since the sale occurred in July 2002, Kaatz was required under sections 860 through 870 to have filed an action challenging the validity of the City's action no later than September 2002.

In opposing K&B Bakewell's alternative motions, Kaatz argued that the LDA and subsequent deeding of the Property by the City were not the kinds of public agency actions that were governed by the validation procedures specified in sections 860 through 870. Accordingly (Kaatz asserted), the action was not time-barred.

In the court's lengthy ruling granting the motion to dismiss, it discussed the various authorities cited by the parties. It held that the validation procedures specified in the validation statutes applied to the City's challenged actions. The court's holding was based upon the following reasoning: (1) Unless contracts such as the LDA were subject to the validation statutes (i.e., allowing for a prompt determination of such contract's validity), the City's ability to operate financially would be substantially impaired; (2) significant third party financial interests were affected by the LDA, suggesting a need for prompt validation of the LDA; and (3) the LDA was a financing mechanism by which the City had acquired the Property.

### C. *The Validation Statutes*

The validation statutes provide a procedure by which a public agency may determine the validity of certain acts. The public agency may bring a validating proceeding in superior court within 60 days of "the existence of any matter which under any other law is authorized to be determined pursuant to [the validation statutes]." (§ 860.) Such an action is "in the nature

of a proceeding in rem." (*Ibid.*) And where the public agency does not initiate a validating proceeding under section 860, "any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter." (§ 863.)[16] The interested person must bring a validating proceeding within 60 days: "No contest except by the public agency or its officer or agent of any thing or matter under this chapter shall be made other than within the time and the manner herein specified." (§ 869.) Thus, insofar as section 863 provides that an interested person "may" bring a validating proceeding, the statute "seems innocuous enough . . . section 869 says he *must* do so or be forever barred from contesting the validity of the agency's action in a court of law." (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 341 [85 Cal.Rptr. 149, 466 P.2d 693] (*City of Ontario*).)[17]

■ Hence, under the validation statutes, the public agency may initiate a proceeding to establish the validity of its act. Alternatively, the agency may do nothing, in which case the act will become immune from attack if no interested person brings a proceeding to establish the act's validity or invalidity within 60 days. (See *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 850–851 [73 Cal.Rptr.2d 427] (*Friedland*) [validation statutes permit the public agency to validate its action by doing nothing and without giving notice, but agency may choose "the more responsible first alternative" of filing a validation proceeding].) As the Supreme Court has observed: "[A]n agency may indirectly but effectively 'validate' its action *by doing nothing to validate it*; unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not. . . . Thus a statute which begins by providing a remedy to be pursued by public agencies, . . . concludes by making it unnecessary for such agencies to do anything at all, and the incidental or derivative remedy of an 'interested person' turns out to be controlling. This is truly a case of the tail wagging the dog." (*City of Ontario, supra*, 2 Cal.3d at pp. 341–342.)

___

[16] The initiation of a validating proceeding by an "interested person" is sometimes referred to as a "reverse validation action." (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara, supra*, 88 Cal.App.4th at p. 792.)

[17] We note that while "any interested person" must bring a validating proceeding within 60 days, "no such restriction is placed on the [public] agency itself, which is in effect authorized by section 869 to disregard the 60-day statute of limitations imposed by section 860." (*City of Ontario, supra*, 2 Cal.3d at p. 341, fn. omitted.) This is the case because the second sentence of section 869 provides: "The availability to any public agency, including any local agency, or to its officers or agents, of the remedy provided by this chapter, shall not be construed to preclude the use by such public agency or its officers or agents, of mandamus or any other remedy to determine the validity of any thing or matter."

The validation statutes do "not specify the matters to which [they] appl[y]; rather, [their] procedures apply to 'any matter which under any other law is authorized to be determined pursuant to this chapter.' (§ 860.)" (*Planning & Conservation League I, supra,* 17 Cal.4th at pp. 268–269.) Thus, we look to other statutes to determine the scope of public agency actions that are subject to validation under the validation statutes.

One statutory source is Government Code section 53511—the statute under which Kaatz (respondents contend) was required to bring a timely validating proceeding here. Government Code section 53511 (now subdivision (a)) provides: "A local agency may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to [the validation statutes]." (See also *Planning & Conservation League I, supra,* 17 Cal.4th at p. 269.)[18]

There are numerous other statutes that provide for the validation of public agency actions by reference to the validation statutes.[19] For instance, a validation action may be brought under Government Code section 56103[20] to determine the validity of a proposed annexation of territory under the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Gov. Code, § 56000 et seq.). (See *Embarcadero Mun. Improvement Dist. v. County of Santa Barbara, supra,* 88 Cal.App.4th at p. 789; *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 465 & fn. 4 [164 Cal.Rptr. 420] [validation proceeding authorized under former Gov. Code, § 35005].) Likewise, Health and Safety Code section 33501, subdivision (a),[21] authorizes a proceeding under the validation statutes to determine the validity of establishing a local redevelopment agency, a redevelopment

---

[18] Government Code section 53511, subdivision (b), provides: "A local agency that issues bonds, notes, or other obligations the proceeds of which are to be used to purchase, or to make loans evidenced or secured by, the bonds, warrants, contracts, obligations, or evidences of indebtedness of other local agencies, may bring a single action in the superior court of the county in which that local agency is located to determine the validity of the bonds, warrants, contracts, obligations, or evidences of indebtedness of the other local agencies, pursuant to [the validation statutes]."

[19] Our research discloses that there are more than 200 statutes that provide for validating proceedings pursuant to sections 860 through 870. The vast majority of these statutes are found in the Government Code (more than 50 statutes) and in the Water Code (more than 90 statutes).

[20] "An action to determine the validity of any change of organization, reorganization, or sphere of influence determination completed pursuant to this division shall be brought pursuant to [the validation statutes]." (Gov. Code, § 56103.)

[21] "An action may be brought pursuant to [the validation statutes] to determine the validity of bonds and the redevelopment plan to be financed or refinanced, in whole or in part, by the bonds, or to determine the validity of a redevelopment plan not financed by bonds, including . . . the legality and validity of all proceedings theretofore taken for or in any way connected with the establishment of the agency, its authority to transact business and exercise its powers, the designation of the survey area, the selection of the project area, the formulation

project, or bonds to be furnished in conjunction with such a project. (See *Sweetwater Valley Civic Assn. v. City of National City* (1976) 18 Cal.3d 270, 276 [133 Cal.Rptr. 859, 555 P.2d 1099]; *Bernardi v. City Council* (1997) 54 Cal.App.4th 426, 436 [63 Cal.Rptr.2d 347].) And under Water Code section 50440,[22] a validation action may be brought to determine the validity of the organization of an irrigation district. (See *Clark's Fork Reclamation Dist. v. Johns* (1968) 259 Cal.App.2d 366, 367 [66 Cal.Rptr. 370].)[23]

### D. *Applicability of Validation Statutes to Second Amended Complaint*

#### 1. *Introduction*

The fundamental question on appeal is whether the City's actions that were challenged in the second amended complaint were matters that were subject to the validation statutes. More specifically, the issue is whether the City could have brought a validating proceeding concerning the execution of the LDA and the sale of the Property to K&B Bakewell—and thus Kaatz, as an "interested person" (§ 863), was required to do so by filing suit within 60 days. If the City's conduct was embraced by the language of Government Code section 53511, permitting the public agency to "bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to [the validation statutes]," then dismissal of the action was proper. The trial court itself acknowledged that this question was not easily resolved.

We begin our analysis by noting two points on which there is no disagreement. Kaatz and respondents concur that not all public agency contracts are within the scope of Government Code section 53511, i.e., not all such contracts are subject to the validation statutes. Indeed, as discussed *post,* our Supreme Court made this point clear more than 30 years ago. (See *City of Ontario, supra,* 2 Cal.3d at pp. 343–344.) For instance, a county contract retaining an attorney to provide legal services to indigent persons is "not the

---

of the preliminary plan, the validity of the finding and determination that the project area is predominantly urbanized, and the validity of the adoption of the redevelopment plan, and also including the legality and validity of all proceedings theretofore taken and (as provided in the bond resolution) proposed to be taken for the authorization, issuance, sale and delivery of the bonds and for the payment of the principal thereof and interest thereon." (Health & Saf. Code, § 33501, subd. (a).)

[22] "An action to determine the legality of the existence of a district may be brought pursuant to [the validation statutes]." (Wat. Code, § 50440.)

[23] As noted (see fn. 19, *ante*), there are numerous other statutes that provide for the validation of certain public agency actions by reference to the validation statutes. (See, e.g., Ed. Code, § 15110; Gov. Code, §§ 977.8, 17700, subd. (a); Sts. & Hy. Code, § 10601; Wat. Code, §§ 9275, 43730.)

kind of financial obligation contemplated to be automatically validated absent a challenge within the 60 days proscribed in sections 860 and 863." (*Phillips v. Seely, supra,* 43 Cal.App.3d 104, 112.) Similarly, in *Smith v. Mt. Diablo Unified Sch. Dist., supra,* 56 Cal.App.3d 412, 421, the court held that a taxpayers' suit challenging the validity of a school district's contract to acquire a computer was not subject to the validation statutes. (See also *Walters v. County of Plumas* (1976) 61 Cal.App.3d 460 [132 Cal.Rptr. 174] (*Walters*) [action challenging award of franchises for collection and disposal of solid waste not subject to validation statutes].)

Second—although not expressly admitted by the parties—there are no cases on point that have considered whether the kinds of contracts involved here (i.e., the LDA and the conveyance of the Property to K&B Bakewell) are the types of public contracts that are subject to validation under Government Code section 53511. Specifically, no case has addressed whether an agreement calling for a public agency's purchase and immediate resale of real property to a private party where the source of the funds for the agency's acquisition is the third party purchaser—a double-escrow transaction—is subject to the validation statutes. Moreover, no case has held generally that a public agency contract to acquire or sell real property is (or is not) a "contract" under Government Code section 53511.

Beyond these two undisputed points, the parties offer radically differing viewpoints on the scope of the word "contracts" in Government Code section 53511, as that issue bears upon whether the City's actions here were subject to the validation statutes. Because it contains our high court's most comprehensive discussion of the validation statutes, we review *City of Ontario, supra,* 2 Cal.3d 335, in some detail.

### 2. City of Ontario v. Superior Court

In *City of Ontario* taxpayers challenged a plan for the financing of a motor raceway that included (1) the issuance and sale by a nonprofit entity formed by the City of Ontario (Ontario) of $25,500,000 in tax-exempt bonds without voter approval, (2) the award of a contract to a private party without competitive bidding for the construction of the raceway for $12,500,000, and (3) the lease of the raceway for 50 years by the nonprofit entity to a for-profit entity that would run the facility as a private business venture. (*City of Ontario, supra,* 2 Cal.3d at p. 338.) The plaintiffs' essential claims were that the plan promoted a private commercial enterprise without any public benefit (*id.* at pp. 338–339) and was an unconstitutional "gift of public funds or lending public credit for private purposes (Cal. Const., art. XIII, § 25)." (*Id.* at p. 339.) After filing an answer, Ontario moved to dismiss the complaint because the plaintiffs failed to comply with particular requirements for the

service of summons under the validation statutes. (*Ibid.*)[24] The trial court denied the motion, impliedly finding that the plaintiffs' claims were governed by the validation statutes but holding that the plaintiffs had shown good cause for failing to comply with the summons requirements. (*Ibid.*)

Ontario brought a writ of prohibition contending that the trial court had abused its discretion in denying the motion to dismiss, a position the Supreme Court rejected. (*City of Ontario, supra*, 2 Cal.3d at pp. 345–348.) In the course of determining that the trial court had not abused its discretion, the Supreme Court provided an extensive discussion of the validation statutes which is relevant to the present appeal.[25]

"[S]ections 860 through 870 . . . were first enacted in 1961. The legislation was proposed by the Judicial Council, which explained that it had been 'concerned for some years with the numerous statutes providing periods within which appeals may be taken at variance with the time for notice of appeal contained in the Rules on Appeal.' [Citation.] In particular, the Council pointed to numerous scattered statutes authorizing actions by cities, counties, and public agencies to establish the validity of their bonds or assessments or the legality of their existence, and providing special procedures for appeals in such cases." (*City of Ontario, supra*, 2 Cal.3d at p. 340.) Thus, as the high court explained the historical context 28 years later, the validation statutes were "first enacted in 1961, with the purpose of consolidating and harmonizing the various existing statutes providing special procedures for actions by cities, counties and public agencies to establish the validity of their bonds and assessments." (*Planning & Conservation League I, supra*, 17 Cal.4th at pp. 268–269.)

---

[24] As described by the court, the validation statutes "require that the summons be directed in addition to 'all persons interested in the matter' (§ 861.1), and be published in a newspaper of general circulation (§ 861); if publication is not completed within 60 days, the action must be dismissed 'unless good cause for such failure is shown' (§ 863)." (*City of Ontario, supra*, 2 Cal.3d at p. 339.)

[25] Although it questioned the applicability of the validation statutes as to each one of the plaintiffs' claims, the Supreme Court did not conclude definitively that the public agency conduct about which the plaintiffs complained was (or was not) subject to validating proceedings. (*City of Ontario, supra*, 2 Cal.3d at p. 346.) The court's review of the validation statutes and Government Code section 53511 led it to conclude that whether the validation statutes applied to the plaintiffs' case "present[ed] a 'complex and debatable' issue" (*City of Ontario, supra*, 2 Cal.3d at p. 345), thereby supporting the plaintiffs' contention that there was good cause for their noncompliance with the summons requirements of the validation statutes. Thus, while *City of Ontario*'s lengthy discussion concerning the scope of the validation statutes and the meaning of the term "contracts" in Government Code section 53511 may be considered dictum, we agree with the appellate court's statement in *Smith v. Mt. Diablo Unified Sch. Dist., supra*, 56 Cal.App.3d at page 418: "Although not controlling, the dicta [of our Supreme Court in *City of Ontario*] is entitled to substantial weight, particularly in view of its thoroughness." (See generally *Evans v. City of Bakersfield* (1994) 22 Cal.App.4th 321, 328 [27 Cal.Rptr.2d 406].)

Government Code sections 53510 and 53511 were enacted in 1963, two years after the enactment of the validation statutes. (Stats. 1963, ch. 2118, § 1, p. 4404.) Ontario argued that the use of the term "contracts" in Government Code section 53511 suggested that the validation statutes applied to *any* public agency contract. (*City of Ontario, supra*, 2 Cal.3d at p. 341.) While conceding that the challenged raceway agreement facially appeared to be embraced by Government Code section 53511 because there was "no limitation or qualification on the word 'contracts' " (*City of Ontario, supra*, at p. 343), the Supreme Court did not end its inquiry at that juncture. Instead, it concluded that a closer examination of Government Code section 53511 suggested a much narrower construction of "contracts" for at least four reasons: "First, the Legislative Counsel's digest . . . characterized the measure as one allowing 'a local agency to bring an action to determine the validity of evidences of indebtedness.' Second, "section 53511 was enacted as part of chapter 3 of part 1, division 2, title 5, of the Government Code. Chapter 3 is entitled 'Bonds,' and deals exclusively with the power of local agencies to sell their bonds, replace defaced or lost bonds, and pledge their revenues to pay or secure such bonds. If [Government Code] section 53511 was intended to be a provision of general application, logically it should have been placed in article 4 ('Miscellaneous') of chapter 1 ('General') of the same part, in which a group of such unrelated matters are collected. Third, the key language of [Government Code] section 53511—'bonds, warrants, contracts, obligations or evidences of indebtedness'—was taken directly from [Code of Civil Procedure] section 864 of Chapter 9; under well-known canons of statutory interpretation, it should ordinarily be given the same meaning as it had in the earlier statute. But as a perusal of the companion 1961 legislation reveals, when [the validation statutes were] adopted [they were] made applicable only to such matters as the legality of the local entity's existence, the validity of its bonds and assessments, and the validity of joint financing agreements with other agencies. If [Government Code] section 53511 was intended to reach any and all contracts into which an agency may lawfully enter, the restricted language of [Code of Civil Procedure] section 864 was inappropriate for that purpose. Finally, that language is peculiarly inapt for expressing such a general meaning in any event, as it lists the word 'contracts' in the midst of four other terms which all deal with the limited topic of a local agency's financial obligations." (*City of Ontario, supra*, at pp. 343–344.)

In addition, the Supreme Court suggested that there were policy reasons for construing "contracts" in Government Code section 53511 more narrowly. In *City of Ontario*, the court noted that a sweeping interpretation of the term "contracts" in that statute and the concomitant application of an abbreviated

60-day statute of limitations for potential challenges to virtually any governmental actions would unduly burden taxpayers presenting such challenges. (*City of Ontario, supra*, 2 Cal.3d at p. 342.)

As we will discuss, the legislative history and statutory construction of Government Code section 53511 elucidated in *City of Ontario* doom respondents' arguments that the challenged actions of the City were subject to the validation statutes. Accordingly, we will conclude that the court below erred in holding that the 60-day statute of limitations applicable for validating proceedings barred Kaatz's claims.

### 3. *Inapplicability of validation statutes to Kaatz's claims*

#### a. *statutory construction*

■ We begin our analysis by noting that in statutory interpretation, "where the language is clear, its plain meaning should be followed. [Citation.]" (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) Thus, "[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature" to interpret the statute. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "But [this] 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute." (*Ibid.*)

■ Here, the parties have radically opposing views on the meaning of the term "contracts" in Government Code section 53511. They agree, however, that "contracts" cannot be interpreted to mean that *all* public agency contracts are subject to the validation statutes. And the Supreme Court noted that while a superficial reading of the statute suggested a broad interpretation of the unqualified term "contracts" (*City of Ontario, supra*, 2 Cal.3d at p. 343), a much narrower construction of the term was evoked upon closer examination (*id.* at pp. 343–344). Clearly, the "plain meaning" rule does not apply and we are constrained to interpret Government Code section 53511 by reference to legislative intent and any other applicable rules of statutory construction.

■ It is a "fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230–231 [110 Cal.Rptr. 144, 514 P.2d 1224]; see also *In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) That intent may be revealed from a review of "[b]oth the legislative history of the statute and the wider historical circumstances of its enactment." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*

(1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med, Inc.*).) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Ibid.*) And the contextual framework of a clause or sentence is particularly important when the statute "contains a list or catalog of items, [in which case] a court determines the meaning of each by reference to the others, giving preference to an interpretation that makes the items similar in nature and scope." (*People v. Fierro* (1991) 1 Cal.4th 173, 262 [3 Cal.Rptr.2d 426, 821 P.2d 1302], fn. omitted.)[26] And in the case of uncertainty, the court should consider "the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, Inc., supra,* at p. 1387.)

### b. *purpose of the validation statutes*

Government Code section 53511 specifically references the validation statutes promulgated two years earlier and borrows from section 864 "the key language . . . 'bonds, warrants, contracts, obligations or evidences of indebtedness' " (*City of Ontario, supra,* 2 Cal.3d at p. 343) that is at the heart of the present controversy. Accordingly, we deem—as (we infer) the Supreme Court did in *City of Ontario*—"the wider historical circumstances of [Government Code section 53511's] enactment" (*Dyna-Med, Inc., supra,* 43 Cal.3d at p. 1387) to include the legislative history and intent of the validation statutes.

In the context of enacting the validation statutes, the Judicial Council had been concerned about the existence of "numerous scattered statutes authorizing actions by cities, counties, and public agencies to establish the validity of their bonds or assessments or the legality of their existence, and providing special procedures for appeals in such cases." (*City of Ontario, supra,* 2 Cal.3d at p. 340; see also *Planning & Conservation League I, supra,* 17 Cal.4th at pp. 268–269.) This focus is borne out by identifying the statutes specifically addressed by the validation statutes. Laws that predated the validation statutes that were, in 1961, either amended or were repealed and replaced to make specific reference to the validation statutes typically pertained to actions to

---

[26] As noted· by the *Fierro* court, "[t]he principle of construction that items grouped in a list should be given related meaning is known to legal scholars under the Latin names *ejusdem generis* and *noscitur a sociis*." (*People v. Fierro, supra,* 1 Cal.4th at p. 262. fn. 1.) As we discuss, *post* (see pt. III.D.3.c.), application of the principle of *noscitur a sociis* is of considerable significance in our conclusions that "contracts" in Government Code section 53511 should be construed in a restrictive fashion and that the validation statutes do not apply to the challenged action of the City in this instance.

test the validity of (1) bonds;[27] (2) assessments;[28] (3) assessments or warrants;[29] or (4) the existence of a governmental district or agency.[30]

Likewise, the validation statutes' relationship to proceedings to test "the validity of [public agencies'] bonds or assessments or the legality of their existence" (*City of Ontario, supra*, 2 Cal.3d at p. 340) was reaffirmed in post-1961 legislation that incorporated the procedures of the validation statutes. Those later statutes by and large concerned the validation of (1) bonds;[31] (2) assessments;[32] or (3) the creation of districts.[33]

---

[27] The vast majority of the preexisting statutes that were amended or repealed and replaced in 1961 to make specific reference to the validating procedures in the validation statutes related to actions to determine the validity of bonds. Most of those statutes concerned actions to determine the validity of bonds only. (See, e.g., Gov. Code, §§ 25211.175, 26353, 26453, 43620.1, 50753, 54580; Health & Saf. Code, §§ 4624, 4803, 4996, 6653; Pub. Resources Code, § 13116.5; Pub. Util. Code, §§ 13341, 26341; Pub. Util. Code App. 1 § 7.48; Sts. & Hy. Code, §§ 33148, 34144 [repealed]; Wat. Code, §§ 9415, 36050, 52120, 52707, 55630; Wat. Code Appen., §§ 8-58, 11-56, 37-11a, 53-21, 54-21, 65-21, 67-11, 77-511, 82-25, 83-166, 88-26, 89-26, 91-26, 92-26 [all citations to Water Code Appendix section are to uncodified acts reprinted at 71-72A West's Annotated Water Code Appendix].) But several statutes concerned actions to test the validity of bonds or related matters. (See, e.g., Pub. Util. Code, §§ 17101 ["bonds or indebtedness"], 29291 ["bonds or other evidences of indebtedness"]; Sts. & Hy. Code, §§ 9478 ["reassessment and of any refunding bonds"], 10601 ["assessment, bonds, contract, improvement or acquisition"]; Wat. Code, §§ 22670 ["any contract . . . levy of any assessment or of bonds"], 23225 ["any contract and bonds"], 43730 ["bonds, assessments, contracts"]; Wat. Code Appen., §§ 21-12 [bonds or assessments], 33-33 ["bonds or assessments"], 45-7, subd. (i) ["bonds and the sufficiency of the provision for the collection of an annual tax"], 51-11.10 ["bonds, levy of any special assessment or a contract"], 59-48 ["bonds, tax levy, or a contract"], 66-11.10 ["bonds, levy of a special assessment, or a contract"], 81-18 [same], 84-21 ["bonds or a contract"], 85-18 ["bonds, levy of a special assessment or a contract"], 86-21 ["bonds, levy of an assessment or a contract"], 93-49 ["bonds or any contract"], 95-22 ["bonds or a contract"], 96-98 ["bonds, levy of a special assessment or a contract"], 99-22.1 ["bonds or a contract"].)

[28] See, e.g., Government Code section 59671; Water Code sections 9275, 23571, 36531; Water Code Appendix, section 40-44.

[29] See, e.g., Water Code sections 24021, 45931.

[30] See, e.g., Government Code section 58200; Streets and Highway Code section 26260; Water Code sections 34530, 50440; Water Code Appendix, section 99-25.1.

[31] As was true with the preexisting statutes amended or replaced in 1961 to refer to the validation statutes (see fn. 27, *ante*), most of the statutes enacted after 1961 that refer to the validation procedures of the validation statutes concern actions to determine the validity of bonds. (See, e.g., Ed. Code, §§ 15110, 15335, 90081; Gov. Code, §§ 977.8, 6516.6, 6599, subd. (b), 8187, 16934, 16959, 17700, 26293.2, 26298.54, 26299.079, 40576, 53356.1, 53359, 53392.7, 53395.7, 53398.7, 53511, 53589.5, 54702.15, 55819, 61006, subd. (b), 63049.4, 91548, 99020; Harb. & Nav. Code App., 1, § 23; uncodified act reprinted at 38 pt. 2 West's Ann. Harb. & Nav. Code—Appen., 2, § 26; Health & Saf. Code, §§ 33501, 33799, 34366.5, 37684, 37964, 52041; Pub. Resources Code, §§ 5363.1, 5526.1, 26037, 32208; Pub. Util. Code, §§ 30980, 40263, 50263, 70263, 90700, 96560, 98370, 99365, 100490, 101330, 102600, 103600, 105260, 120700, 125714, 132370.8, 170078; Rev. & Tax. Code, § 7286.36; Sts. & Hy.

Moreover, the legislative history of amendments to the validation statutes—cited by the Supreme Court in *Planning & Conservation League I, supra,* 17 Cal.4th 264—emphasizes that the focal point of the validation statutes was to ensure the ability of public agencies to obtain the timely validation of their bonds. Section 870 was amended in 1985 to add subdivision (b) to provide for an across-the-board 60-day appeal period. (Stats. 1985, ch. 229, § 1, p. 1243.) This amendment thereby eliminated the possibility that an appeal made more than 60 days after entry of judgment in a validating proceeding could be deemed timely. (*Planning & Conservation League I, supra,* at p. 271.) As explained by the high court: "The 1985 amendment (Sen. Bill No. 479) had a simple purpose: 'to clarify the time within which an appeal may be taken in a validation proceeding, and thus accelerate the finality of these proceedings.' [Citation.] The Senate committee analysis noted that *validation actions are most commonly used to secure a judicial determination that a government entity's proposed issuance of bonds is valid.* The possibility of an appeal from the judgment validating the issue, together with [California Rules of Court,] rule 2(a)'s allowance of an appeal within 180 days from entry of judgment if no notice is served or mailed, resulted in a lengthy period of uncertainty, during which underwriters and counsel often felt compelled to wait before issuing the bonds. [Citation.] The amendment to section 870 was proposed in order to 'reduce the period of "uncertainty" ' created by application of rule 2(a) to validation actions. [Citation.]" (*Id.* at pp. 271–272, italics added.) Additionally, the 1994 amendment to section 870 (Stats. 1994, ch. 242, § 1, p. 1832) shortening further the appeal period under the validations statutes to "30 days after the notice of entry of the judgment, or, within 30 days after the entry of the judgment if there is no answering party" (§ 870, subd. (b)) was characterized at the time by the state Department of Finance as " 'reduc[ing] the time it takes to get bond approval and proceed to market.' [Citation.]" (*Planning & Conservation League I, supra,* at pp. 272–273; see also *ibid.* [holding that appealable order from validation proceeding was governed by same 30-day appeal period under § 870, subd. (b), because a contrary holding would result in "uncertainty that could affect the confidence of others (e.g., bond buyers) in the finality of the validation action"].)

---

Code, §§ 8830, 9704, 10100.2; Wat. Code, §§ 36062, 71752, 81442, 81662; Wat. Code Appen., §§ 40-21.12, 43-26.13, 46-37, 103-19, 109-163, 110-579, 113-94, 114-163, 118-412, 127-51, 130-121, 133-404, 138-702.)

[32] See, e.g., Public Resources Code section 9912; Water Code section 30066; Water Code Appendix, sections 36-19.20, 48-26.13.

[33] See, e.g., Government Code sections 53395.6, 53398.6, 55855, 61006, subdivision (a); Health and Safety Code sections 2006, 9006, 13806; Public Resources Code section 5780.9; Water Code Appendix, section 120-3.

### c. *Government Code section 53511*

■ We have considered the Supreme Court's construction of Government Code section 53511 based upon legislative history and other rules of interpretation. (See *City of Ontario, supra,* 2 Cal.3d at pp. 341–344.) In sum, the court identified four factors that suggested that the word "contracts" in the statute should be construed more narrowly than a reading that would make virtually all public agency contracts subject to the validation statutes: (1) the characterization of the proposed statute in the Legislative Counsel's digest as permitting " 'a local agency to bring an action to determine the validity of evidences of indebtedness' " (*id.* at p. 343); (2) the statute's placement as part of chapter 3 (entitled "Bonds") of part 1, division 2, title 5 of the Government Code (*ibid.*); (3) the fact that the relevant language of the statute ("bonds, warrants, contracts, obligations, or evidences of indebtedness") was borrowed from section 864 of the validation statutes, requiring that it be given the same meaning that it had in the earlier statute, i.e., the validation statutes were "made applicable only to such matters as the legality of the local entity's existence, the validity of its bonds and assessments, and the validity of joint financing agreements with other agencies" (*City of Ontario, supra,* at p. 343); and (4) the use of "contracts" surrounded by four limited-topic terms made it "peculiarly inapt for expressing such a general meaning" (*id.* at p. 344).

■ This fourth factor appears to be an application of the *noscitur a sociis* rule of construction. "*Noscitur a sociis* ('it is known by its associates') is the principle that ' " 'the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used.' " ' [Citations.]" (*Texas Commerce Bank v. Garamendi* (1992) 11 Cal.App.4th 460, 471, fn. 3 [14 Cal.Rptr.2d 854].) In other words, "a word takes meaning from the company it keeps." (*People v. Drennan* (2000) 84 Cal.App.4th 1349, 1355 [101 Cal.Rptr.2d 584].) " 'In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list.' [Citation.]" (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Here, we agree with the court in *City of Ontario* that a narrower meaning of "contracts" is appropriate, in part because adopting a more expansive meaning would "make the [term] markedly dissimilar to the other items," namely, "bonds, warrants, . . . obligations or evidences of indebtedness" (Gov. Code, § 53511, subd. (b); see, e.g., *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 145–146 [114 Cal.Rptr.2d 93] [applying *noscitur a sociis* to give narrow meaning to term "dismissal" in context of mandatory provisions affording party relief from default, default judgment, or dismissal under section 473, subd. (b)].)

We also deem it of some significance that, since *City of Ontario, supra,* 2 Cal.3d 335, was decided in 1970, the Legislature has not acted to modify in any way Government Code section 53511 to give a more expansive definition of the term "contracts" than its construction by the Supreme Court. (See *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155 [278 Cal.Rptr. 614, 805 P.2d 873] [Supreme Court "generally presume[s] the Legislature is aware of appellate court decisions"].) Furthermore, the Legislature *has* amended Government Code section 53511 since 1970. In 2004, it added subdivision (b) to the statute but did not change the original text of the statute other than to insert subdivision (a) immediately before it. (Stats. 2004, ch. 470, § 3.) This fact suggests that the Legislature had no quarrel with *City of Ontario's* restrictive interpretation of the term "contracts." (See *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115] "[W]hen the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction."].) Furthermore, in the Legislature's addition of subsection (b) of Government Code section 53511, it repeated the same language in the original statute that is at issue here, i.e., "bonds, warrants, contracts . . . ." (See fn. 18, *ante.*) This fact further suggests the Legislature's concurrence with *City of Ontario's* earlier interpretation of the statute and, in particular, its interpretation of the term "contracts." (See *City of Long Beach v. Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305] ["It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts."].)

Moreover, it is clear that the Legislature knows how to draft language that clearly provides a broad scope for matters embraced by the validation statutes. (See generally *Dyna-Med, Inc., supra,* 43 Cal.3d at p. 1395 [rejecting construction of statute as authorizing Fair Employment and Housing Commission to award punitive damages, where review of other statutes disclosed that "when the Legislature intends to authorize an agency to award damages for discrimination, it does so expressly"].) For example, a number of statutes expressly provide for proceedings under the validation statutes to validate *any* action by the public agency. (See, e.g., Gov. Code, §§ 26170.20, 55855; Health & Saf. Code, §§ 2006, 9006, 13806; Pub. Resources Code, § 5780.9.) Likewise, various statutes refer to the validation statutes to permit proceedings to determine the validity of *any* contract. (See, e.g., Pub. Contract Code, § 20434; Wat. Code, §§ 22670, 35855, 50979, 71752, 81442, 81662; Wat. Code Appen., §§ 52-39, 64-64, 98-64, 100-19.5, 101-19.5, 112-19.5,

114-163, 118-412, 127-51.) And, significantly, some of the statutes authorizing the testing of "any contract" by an action brought pursuant to the validation statutes were enacted before the 1963 enactment of Government Code section 53511. (See Wat. Code, §§ 35855, 50979; Wat. Code Appen., §§ 98-64, 100-19.5, 101-19.5.)[34]

It is therefore clear that "contracts" under Government Code section 53511 should be assigned a restricted meaning. Rather than authorizing proceedings to validate any public agency contract—or even any contract constituting a financial obligation of a public agency[35]—the "contracts" under Government Code section 53511 are only those that are in the nature of, or directly relate to a public agency's bonds, warrants or other evidences of indebtedness. We next examine whether, in light of this restricted meaning, the City's execution of the LDA was an action embraced by Government Code section 53511.

### d. *the LDA and the validation statutes*

The LDA bears no relationship to the issuance of bonds. No bonds were issued or contemplated in connection with the proposed transaction under which the City would acquire Hayes Park and then resell it to K&B Bakewell. Likewise, the LDA does not relate to warrants.

We conclude further that the LDA neither constituted nor related to "evidence[] of [public agency] indebtedness." (Gov. Code, § 53511.) In the context of the validation statutes, the LDA did not represent a transaction in which the City borrowed funds for a specific purpose (i.e., the acquisition of

---

[34] Moreover, the language of Water Code section 71752, enacted in 1963 (Stats. 1963, ch. 1151, § 17, p. 2641) is interesting: "An action to determine the validity of any contract authorized by Article 1 (commencing with [Water Code] Section 71720) of Chapter 5 of this part and any bonds, notes or other evidences of indebtedness may be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." Thus, as of 1963, the Legislature was clearly able to promulgate statutes that used the term "contracts" with an unrestricted meaning, separated from terms with a more restricted scope, as contrasted with the syntax of Government Code section 53511 ("bonds, warrants, contracts, obligations, or evidences of indebtedness"), assigning a much narrower meaning to the term "contracts."

[35] If Government Code section 53511 were construed to authorize validating proceedings for any contract constituting an obligation and/or financial obligation of a public agency, its scope would be unrestricted. Such a construction would yield the conclusion that "contracts" under Government Code section 53511 would even include agency contracts previously held to not be subject to the validation act. (See, e.g., *Walters, supra,* 61 Cal.App.3d 460 [franchises for collection and disposal of solid waste]; *Smith v. Mt. Diablo Unified Sch. Dist., supra,* 56 Cal.App.3d at p. 421 [school district contract to acquire computer]; *Phillips v. Seely, supra,* 43 Cal.App.3d at p. 112 [contract to retain attorney to provide legal services to indigents].) Thus, just as the term "contracts" must be interpreted by reference to the four other terms in Government Code section 53511 surrounding it, so must the term "obligations" be so construed to give it a more restrictive meaning.

the Property). The LDA did not memorialize or otherwise describe an indebtedness incurred by the City. And we reject respondents' contention to the contrary. In essence, respondents assert that because the City was not itself directly providing the funds for purchasing the Property—but instead was using a portion of the funds provided by K&B Bakewell in exchange for the City's subsequent, immediate resale of the Property—the LDA was a "financing mechanism" that was subject to the validation statutes. But neither the LDA nor the resolution authorizing its execution spoke in terms of loaning funds or otherwise providing money to the City for its acquisition of the Property. We believe that treating the LDA as a financing agreement would be an unnatural characterization of the document.

Respondents raise several additional arguments that the LDA was subject to a validating proceeding. First, they contend that the Supreme Court distinguished between "routine" or "run-of-the-mill" public agency contracts that are not subject to the validation statutes, and those contracts that "embody important policy decisions affecting the public at large." (*City of Ontario, supra*, 2 Cal.3d at p. 341.) Respondents argue that because the LDA fell into the second category, it was governed by the validation statutes. *City of Ontario*, however, does not establish such a bright-line test. A careful reading of the case discloses that the passage relied on by respondents was meant as an illustration of the breadth of public agency actions accomplished by contract, not as a statement that agency contracts are subject to the validation statutes if they "embody important policy decisions affecting the public at large." (*Id.* at p. 341.) Further, as seen from our discussion, *ante*, nothing in the legislative history of either the validation statutes or Government Code section 53511 suggests that the Legislature intended to provide for validation of public agency contracts where they were "important" or "affect[ed] the public at large." Moreover, we believe such a "test" would create an unworkable formula for determining whether an agency contract was subject to validation.[36]

Second, respondents assert that the LDA was subject to the validation statutes because it was of such significance that "the lack of a prompt validating procedure [would] impair the public agency's ability to operate." (*Walters, supra*, 61 Cal.App.3d at p. 468; see also *Graydon v. Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 644–645 [164 Cal.Rptr.

---

[36] Arguing against the proposition that the applicability of the validation statutes to public agency contracts is determined by whether they are "important" or "affect[] the public at large" (*City of Ontario, supra*, 2 Cal.3d at p. 341), Kaatz relies extensively on a recent decision of the Third District Court of Appeal for which review was subsequently granted by the Supreme Court. (*In re Bay-Delta Programmatic Environmental Impact Report Coordinated Proceedings* (2005) 133 Cal.App.4th 154 [34 Cal.Rptr.3d 696], review granted *sub. nom. Laub v. Davis* Jan. 25, 2006, S138975, S138974.) Accordingly, we have not considered the case in reaching our conclusion. (Cal. Rules of Court, rules 976(d)(1), 977(a).)

56] (*Graydon*).) And they argue further that the absence of proceedings under the validation statutes here would "impair a public agency's ability to operate financially." (*Friedland, supra,* 62 Cal.App.4th 835, 843.)[37] But while having a prompt validating procedure to permit a public agency to operate without impairment may be a significant rationale for the validation statutes' application to agency action as provided in the statutes (e.g., the issuance of bonds), this rationale should not be transformed into a test for determining the type of agency action encompassed by Government Code section 53511 and the validation statutes. Nothing in either *City of Ontario, supra,* 2 Cal.3d 335, or the legislative history suggests that Government Code section 53511 should be construed to mean that contracts or obligations are governed by the validation statutes if a contrary conclusion would result in the impairment of the public agency's ability to operate (or to operate financially). Such a proposed standard is unsupported by either the legislative history of the statute or the intent of the Legislature. It is moreover a nebulous test, the application of which would result in uncertainty and inconsistent results based upon the extent to which individual judges might view a public agency's ability to operate in a particular instance as impaired or not impaired by the absence of a validating proceeding.

Third, respondents argue that because the LDA concerned the City's financial transaction with a third party, K&B Bakewell, it was thus subject to the validation statutes.[38] The genesis of this argument is apparently a statement in *Walters, supra,* 61 Cal.App.3d 460. Immediately following its reference to "impair[ment of] the public agency's ability to operate" (discussed, *ante*), the court noted: "We feel that the possibility of future litigation is very likely to have a chilling effect upon potential third party lenders." (*Id.* at p. 468; see also *Friedland, supra,* 62 Cal.App.4th at p. 843 [one objective of validation statutes "is to facilitate a public agency's financial transactions with third parties by quickly affirming their legality"].) But if this were the standard, then *any* financial transaction between a public agency and a third party would be subject to the validation statutes, a proposition that is simply not true. (See fn. 35, *ante,* and cases cited therein.) And the extent to which the nonapplication of the validation statutes may have a chilling effect upon a

[37] The trial court adopted this reasoning: "The court finds . . . that the LDA is the type of contract that the city's ability to operate financially and to proceed with its contractual obligations would be substantially impaired without such a prompt validation requirement. . . . [¶] . . . [¶] . . . Requiring a validation action under the facts of this contract fulfills [the] objective[of] . . . limit[ing] the extent to which delay due to litigation may impair a public agency's ability to operate financially."

[38] It is apparent that the trial court based its decision in part on this factor: "Significant third party financial interests also are affected by this type of contract [the LDA]. . . . [¶] . . . [¶] . . . Requiring a validation action under the facts of this contract fulfills [the] objective[of] . . . facilitat[ing] a public agency's significant financial transactions with third parties by quickly affirming their legality."

third party to a transaction with a public entity is not a standard for determining whether the public agency action is, in fact, of the type that is covered by the validation statutes and Government Code section 53511. As is true of the other so-called tests advanced by respondents that we have discussed and rejected, the "chilling effect" standard is unsupported by statutory construction and is an impracticable formula.

Moreover, the authorities upon which respondents rely do not suggest a different conclusion. For instance, in *Graydon, supra,* 104 Cal.App.3d at page 634—which K&B Bakewell claimed at oral argument to be the principal case supporting its position—the Pasadena Redevelopment Agency sold approximately $58 million in tax allocation bonds to finance the public cost of a retail shopping development, which included buildings and parking garages (one subterranean and two above ground). The *Graydon* plaintiffs challenged a component of that project, namely, the award and execution by the agency of a contract (valued at approximately $12 million) for construction of the subterranean garage, claiming that it was illegal because it was awarded without competitive bidding. (*Id.* at pp. 634–635.) The appellate court held that the action was subject to the validation statutes because, while it may not have been a direct challenge to the agency's issuance of bonds to fund the project, the subterranean garage contract was "an integral part of the whole method of financing the public costs associated with the retail center. The financing is by bonds issued by the Agency." (*Id.* at p. 645.) Thus, the public agency action being challenged indirectly in *Graydon* was a public financing arrangement: "These bonds were intimately and inextricably bound up with the award of this contract [to construct the subterranean garage]." (*Id.* at p. 646.) The case before us involves no such challenge (direct or indirect) to a public financing arrangement.

In *Walters, supra,* 61 Cal.App.3d 460, the court concluded that the claims challenging the bidding and awarding of franchises for the collection and disposal of solid waste were not subject to the validation statutes. (*Id.* at p. 468.) But it held that the validation statutes were applicable to the plaintiff's claim challenging the county's guaranty of the third party franchisees' respective payment obligations for the purchase of heavy equipment. (*Walters, supra,* at pp. 468–469.) Thus, *Walters* is likewise factually distinguishable. Unlike Kaatz's claims, the claim in *Walters* that was subject to the validation statutes did, in fact, concern a direct commitment of public funds for a project, namely, the guarantee of third party obligations. And while respondents argue that the holding in *Walters* supports a broad application of Government Code section 53511—enunciating a standard based on whether the "lack of a prompt validating procedure will impair the public agency's ability to operate" (*Walters, supra,* at p. 468)—we have previously rejected that assertion.

Moreover, we disagree that respondents' position is supported by *Friedland, supra,* 62 Cal.App.4th 835, a case that concerned bonds and a substantial commitment of public funds relating to their issuance. In *Friedland,* an aquarium project was being financed by the issuance of a nonprofit corporation's revenue bonds in the amount of $130 million. (*Id.* at p. 838.) The project included pledges of designated funds by two public agencies as security for payment of the debt service on the bonds. (*Id.* at p. 839.) Following the entry of judgment on a validation action brought by the entities to validate (among other actions) the pledges, the plaintiffs brought suit to invalidate the public actions. (*Ibid.*) The court held that the pledges of public funds were proper subjects of the prior validation proceeding (*id.* at p. 845) and rejected the plaintiffs' contention that, notwithstanding the 60-day statute of limitations under the validation statutes, they could raise constitutional challenges at any time (*id.* at pp. 846–847).

Here, unlike *Friedland,* there was neither a pledge of public funds nor a project involving bonds. And there was no prior action filed by the City to validate its execution of the LDA. To the contrary, as Kaatz argues, there is no evidence that the City—at any time prior to joining in K&B Bakewell's motion to dismiss (more than six months after Kaatz filed suit)—ever believed that the LDA was subject to the validation statutes. There was no reference to potential validating proceedings in the 34-page LDA. Nor did the City raise the issue of the alleged failure to bring a timely validating proceeding in its opposition to Kaatz's application for preliminary injunction, or in its answer to the complaint. Thus, *Friedland, supra,* 62 Cal.App.4th 835, involved very different circumstances—a clear, substantial commitment of public funds as security for the issuance of bonds that had been the subject of prior validating proceedings—than the case before us.

Furthermore, we reject the City's claim that, based on language found in *Friedland,* 62 Cal.App.4th at page 843, public agency contracts under Government Code section 53511 are subject to the validation statutes if they are "contracts involving financing and financial obligations." Nothing in *Friedland* suggests that by "financial obligations," the court meant that *any* financial obligation incurred by a public agency is subject to the validation statutes. Such a suggestion would be unfounded since, as we have discussed (see fn. 35, *ante*), not all contracts that involve financial commitments by the agency are covered under the validation statutes. (See *Phillips v. Seely, supra,* 43 Cal.App.3d at p. 112.)

Lastly, K&B Bakewell cites *Planning & Conservation League II, supra,* 83 Cal.App.4th 892, in support of its claim that the term "contracts" in Government Code section 53511 should be read broadly to include the LDA. K&B Bakewell argues that the term "contracts" is not limited to public

agency financing issues because those involved in *Planning & Conservation League II* were long-term contracts affecting water supply and distribution in the state—where "[f]inancing was not the issue . . . [but the contracts clearly involved] issue[s] of widespread public importance." But in that case, the controversy on appeal did not concern whether the plaintiffs' claims were subject to the validation statutes. Rather, the primary issues concerned whether the state Department of Water Resources had abdicated its statutory duty to serve as the lead agency in preparing the environmental impact report (EIR), and whether the trial court had erred in finding the EIR to have been sufficient. A secondary issue concerned whether the trial court had erred in granting summary adjudication of the validation cause of action on the basis that previously dismissed defendants were indispensable parties. The appellate court concluded that this ruling was error because an action pursuant to the validation statutes is an in rem proceeding. (*Planning & Conservation League II, supra*, at pp. 921, 924–926.)[39] No issue was raised by the parties or addressed by the court concerning whether the public agency action challenged by the plaintiffs was a proper subject for validation. Therefore, *Planning & Conservation League II, supra*, 83 Cal.App.4th 892, offers no support for respondents' contention that the LDA was subject to the validation statutes.

### e. *Conclusion*

 Based upon the foregoing, we conclude that the City's conduct challenged in this action—the execution of the LDA and the City's subsequent conveyance of the Property to K&B Bakewell pursuant to that agreement—were not matters embraced by the validation statutes and Government Code section 53511. In so concluding, we note that there are competing policy considerations. On the one hand, respondents, as well as amici curiae,[40] argue that important matters such as a public agency's acquisition and subsequent resale of a large tract of land should be the subject of prompt final resolution by application of the validation statutes. Among the concerns is the risk that, absent the mechanism of prompt resolution that a validating proceeding provides, third parties such as developer K&B Bakewell would be unwilling to enter into a transaction such as the LDA here. Irrespective of this policy concern—and without offering an opinion here on its importance—we will not rewrite or interpret the validation statutes and Government Code

---

[39] In so doing, the appellate court held that the trial court's prior ruling granting the motion to quash of the claimed indispensable parties—and the Supreme Court's subsequent dismissal of the plaintiffs' appeal of that order in *Planning & Conservation League I, supra*, 17 Cal.4th 264—did not preclude the plaintiffs' subsequent summary adjudication motion. (*Planning & Conservation League II, supra*, 83 Cal.App.4th at pp. 922–924.)

[40] We have considered the respective amicus curiae briefs filed by (1) California State Association of Counties, and (2) California Building Industry Association, Building Industry Legal Defense Foundation, and Homebuilders Association of Northern California.

section 53511 in a manner inconsistent with legislative history or intent, or in a way that is contrary to the rules of statutory construction.

■ We are also mindful of the competing policy concern militating against broad application of the validation statutes to render public agency actions incontestable. As the Supreme Court expressed in response to the potential application of Government Code section 53511 to all public agency "contracts": "[I]f [Ontario's] construction of the word 'contract' is correct, virtually every taxpayer has become an 'interested person' with regard to virtually every action of a local public agency. It is unreasonable to assume that the members of such a large and amorphous group are likely to have prompt notice of each agency action affecting them. Yet whether such a person has such notice or not, he is given only 60 days in which (1) to discover the existence, scope and effect of the agency's action, (2) to reach a conclusion as to its validity, (3) to determine whether the agency has instituted a validating proceeding or imminently intends to do so, and (4) if not, to prepare and file a proceeding of his own. In an age of increasingly complex government, this seems a heavy burden to impose on the vigilant taxpayer." (*City of Ontario, supra,* 2 Cal.3d at p. 342.) We thus decline to interpret the validation statutes broadly insofar as they impose an abbreviated statute of limitations upon challenges to public agency actions, where the Legislature has not intended to do so. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79] ["To establish any particular limitations period under any particular statute of limitations entails the striking of a balance between the two [public policies of applying time limits for filing actions to promote repose and the countervailing policy of having matters decided on their merits]. To establish any such period under any such statute belongs to the Legislature alone [citation], subject only to constitutional constraints [citation]."].)[41]

---

[41] Because we conclude that the validation statutes are inapplicable to the claims asserted in the second amended complaint and the court therefore erred in dismissing the action, we need not address Kaatz's remaining arguments in support of reversal of the judgment. (See *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 655 [4 Cal.Rptr.3d 249] [appellate courts generally "decline to decide questions not necessary to the decision"].) Furthermore, we do not address the merits of K&B Bakewell's demurrer to the second amended complaint on which the trial court expressly stated that it took no action in light of its granting of the motion to dismiss. (See *Walters, supra,* 61 Cal.App.3d at p. 469, fn. 2 [court reviewing dismissal based on validation statutes may reverse without deciding merits of separate demurrer not ruled on by trial court].)

## DISPOSITION

The judgment entered on the order dismissing the second amended complaint is reversed.

Mihara, Acting P. J., and McAdams, J., concurred.

A petition for a rehearing was denied October 10, 2006, and respondent's petition for review by the Supreme Court was denied January 17, 2007, S147646. Moreno, J., did not participate therein.